Jonathan R. LaDEW

v.

**COMMISSIONER OF MENTAL HEALTH AND MENTAL RETARDATION.**

Supreme Judicial Court of Maine.

Argued Sept. 15, 1987.
Decided Nov. 2, 1987.

John D. Pelletier (orally), Augusta, for plaintiff.

James E. Tierney, Atty. Gen., Charles K. Leadbetter, William R. Stokes (orally), Asst. Attys. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

McKUSICK, Chief Justice.

Jonathan LaDew appeals the denial by the Superior Court (Kennebec County) of his petition for release from the Augusta Mental Health Institute (AMHI), where he was committed on September 30, 1985, after being acquitted by reason of insanity on charges of arson and aggravated assault. The Superior Court held that LaDew, at the hearing held on January 13, 1987, failed to establish as clear and convincing under 15 M.R.S.A. § 104–A (Supp.1986) that he could be released without likelihood that he would cause injury to himself or others because of mental disease or mental defect. We affirm.

## I.

■ As an initial matter we address the position adopted by the Superior Court that in determining under 15 M.R.S.A. § 104–A(1) whether LaDew posed a threat to the community because of mental disease or mental defect,[1] the court must measure his psychological condition at the time of the release hearing against the new, narrower standard of "mental disease or defect" that the legislature required to be proved, effective July 16, 1986, to obtain an acquittal by reason of insanity (BRI) under section 39 of the Criminal Code. 17–A M.R.S.A. § 39 (Supp.1986) (as amended by P.L.1985, ch. 796). The Superior Court held that although LaDew's acquittal BRI came before the amendment of section 39 took effect, his petition for release should be evaluated under the new definition of "mental disease

or defect" since he commenced his release action in October 1986, three months after the amendment took effect. We cannot agree.

At the time LaDew was committed to AMHI in September 1985, Maine's insanity defense contained both a volitional and a cognitive standard. The Criminal Code provided in part:

A defendant is not criminally responsible if, at the time of the criminal conduct, as a result of mental disease or defect, he either lacked substantial capacity to conform his conduct to the requirements of the law, or lacked substantial capacity to appreciate the wrongfulness of his conduct. The defendant shall have the burden of proving, by a preponderance of the evidence, that he lacks criminal responsibility as described in this subsection.

17–A M.R.S.A. § 39(1) (1983). The 1986 amendment of section 39 removed the volitional aspect of Maine's insanity defense, leaving only the cognitive aspect. As a result, after the effective date of the amendment a defendant asserting the insanity defense, once he has been found guilty of criminal conduct, is required to establish by a preponderance of the evidence that "at the time of the criminal conduct, as a result of mental disease or defect, he lacked substantial capacity to appreciate the wrongfulness of his conduct." 17–A M.R.S.A. § 39(1) (Supp.1986). The amended statute also redefines "mental disease or defect" to reflect the absence of the volitional element:

As used in this section, "mental disease or defect" means only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality. An abnormality manifested only by repeated criminal conduct or excessive use

1. Under 15 M.R.S.A. § 104–A(1) (Supp.1986) La-Dew, having been committed following his acquittal because of mental disease or mental defect, may be released from AMHI or discharged from the custody of the Commissioner of Mental Health and Mental Retardation only "[i]f, after hearing, the [Superior] [C]ourt finds that [he] may be released or discharged without like-

lihood that he will cause injury to himself or to others due to mental disease or mental defect...." At the hearing on his petition, LaDew had the burden of proving by clear and convincing evidence that he satisfies the conditions for his release. See *Taylor v. Commissioner of Mental Health and Mental Retardation*, 481 A.2d 139, 150 (Me.1984).

of alcohol, drugs or similar substances, in and of itself, does not constitute a mental disease or defect.

*Id.* § 39(2).[2]

The Superior Court applied the amended standard of "mental disease or defect" to LaDew's petition for release. The court reasoned that since the legislature amended the release provisions of title 15 as part of the same bill altering the insanity defense statute, P.L.1985, ch. 796 (enacting L.D. 2397 (112th Legis.1986)), the new definition of "mental disease or defect" would apply with equal force to the release provisions in any release proceeding commenced after July 16, 1986. That narrower definition, the court noted, would make it easier for LaDew on his present petition for release to establish the absence of a mental disease or defect.

The temporal application of a statutory amendment is a matter of legislative intent. *See Michaud v. Northern Maine Medical Center,* 436 A.2d 398, 400 (Me.1981). Guided by that principle, we conclude, contrary to the Superior Court's ruling, that on LaDew's petition for release the question of the continued existence of his mental disease or defect must be decided on the pre-amendment standard under which he was acquitted BRI and committed to AMHI. We agree that the insanity defense provisions of the Criminal Code and the title 15 provisions for the examination, commitment, and release of acquittees BRI (15 M.R.S.A. §§ 101–105) must be read and applied as a single integrated whole. We reject, however, any notion that in enacting chapter 796 in 1986 the legislature intended to reduce the showing that need be made thereafter to gain release for a BRI acquittee committed prior to its enactment. One anomalous result of the Superior Court's ruling would be that an individual committed solely under the volitional element of the insanity defense the day before the statute went into effect would be able to gain release the day after because of the removal from the definition of "mental disease or defect" of that volitional element. Nothing in the statute warrants such an odd result. Rather one would reasonably expect that to be released under 15 M.R.S.A. § 104–A a BRI acquittee must show (clearly and convincingly) that the mental disease or defect by reason of which he was relieved of criminal responsibility no longer exists, or at least no longer poses a danger to himself or others if he is released. Under such a reading the 1986 change in Maine's insanity defense would simply be irrelevant in assessing a release petition of someone committed under the earlier law.

This common sense conclusion is supported by the legislative history of chapter 796, which tightened the definition of "mental disease or defect" effective July 16, 1986. Although chapter 796 amended both the insanity defense in the Criminal Code and the release provisions of title 15, there is no language in the chapter stating or suggesting that the changes would reduce or otherwise alter the required showing for release of those committed before the law went into force. In fact the chapter 796 amendments made only structural changes in the release statute itself, perhaps most importantly creating a State Forensic Service to examine the mental condition of defendants asserting the insanity defense and of BRI acquittees seeking release. P.L.1985, ch. 796, §§ 4, 7. Those changes have nothing to do with the substantive standards a court must apply in hearing and deciding a release petition. A report by the legislative subcommittee that proposed the amendments that became chapter 796 emphasized the public concern that BRI acquittees were too quickly being released and too quickly gaining complete discharge. *See Report of the Insanity De-*

---

**2.** At the time of LaDew's acquittal BRI, the insanity defense statute defined "mental disease or defect" as follows:

As used in this section, "mental disease or defect" means any abnormal condition of the mind which substantially affects mental or emotional processes and substantially impairs the processes and capacity of a person to control his actions. An abnormality manifested only by repeated criminal conduct or excessive use of alcohol, drugs or similar substances, in and of itself, does not constitute a mental disease or defect.

17–A M.R.S.A. § 39(2) (1983).

*fense and Related Statutes and Procedures Study Subcommittee of the Joint Standing Committee on the Judiciary* 15–16, 18–19 (1986). It is most unlikely, therefore, that the legislature chose to amend the release provisions in a manner that could require release of a group of BRI acquittees who would not have been released absent the amendments.

## II.

■ To gain release from AMHI under 15 M.R.S.A. § 104–A, LaDew had to prove by clear and convincing evidence that he could be released without likelihood that he would cause injury to himself or others because of mental disease or mental defect. *See Taylor v. Commissioner of Mental Health and Mental Retardation,* 481 A.2d at 150. At the hearing on his petition, all the witnesses agreed that if released LaDew would pose a threat to the safety of himself and others, thus making the only real issue whether he then continued to suffer from a mental disease or defect. That issue was a question of fact to be decided by the Superior Court as the factfinder. In performing its function in finding the facts the trial court was not bound by psychiatric opinion testimony presented at the hearing to the exclusion of other psychological reports admitted in evidence and other evidence relevant to LaDew's mental condition. *See State v. Boone,* 444 A.2d 438, 444 (Me.1982); *In re Fleming,* 431 A.2d 616, 618 (Me.1981). On appeal from the Superior Court's ultimate finding that LaDew had failed to prove by clear and convincing evidence that he was free of mental disease or defect, we must affirm unless the record evidence compelled the Superior Court to make a finding in favor of the party with the burden of proof. *See Harmon v. Emerson,* 425 A.2d 978, 982 (Me.1981). In other words, we must affirm unless the Superior Court acted irrationally in failing to be satisfied that clear and convincing evidence showed LaDew to be qualified for release. *See Taylor v. Commissioner of Mental Health and Mental Retardation,* 481 A.2d at 147.

■ Since LaDew's commitment resulted from his acquittal BRI under the old statute, which contained both cognitive and volitional categories, and since he had not shown whether his mental disease or defect was of the volitional or the cognitive variety or both, he was required at the hearing on his petition for release to prove by clear and convincing evidence that he at the time of hearing no longer suffered from a mental disease or defect that disrupted *either* his cognitive or his volitional capacity. The Superior Court, however, assessed LaDew's petition under the amended insanity defense definition with its single cognitive category. Applying the terms of that amended statute, the court found, with ample support in the record, that LaDew failed to establish that he no longer suffered from a "severely abnormal" mental condition that "grossly and demonstrably impair[s] [his] perception or understanding of reality."

Since the new standard of mental disease or defect is if anything more stringent than that under which LaDew was committed, the Superior Court's finding that the "petitioner's history ... indicates that he does have a mental disease or defect as defined by 17–A M.R.S.A. § 39(2)" as amended constitutes *a fortiori* a finding that his history indicates that he still has a mental disease or defect under at least the cognitive branch of the prior statutory definition. In other words, if petitioner cannot establish his freedom from the more severe form of cognitive mental disease or defect required for acquittal BRI since July 16, 1986, *a fortiori* he fails to prove his freedom from the cognitive branch of mental disease or defect under the lesser pre–1986 standard.

The cognitive category of both the earlier and the amended insanity defense statutes refers to an individual who, because of mental disease or defect, "lacked substantial capacity to appreciate the wrongfulness of his conduct." *Compare* 17–A M.R.S.A. § 39(1) (1983) *with* 17–A M.R.S.A. § 39(1) (Supp.1986). The only difference rests in the new definition of mental disease or defect as *"those severely abnormal mental conditions that grossly and*

*demonstrably impair* a person's perception or understanding of reality." 17–A M.R.S.A. § 39(2) (Supp.1986) (emphasis added). The earlier definition, reflecting the volitional aspect of the old statute, described a mental disease or defect as *"any abnormal* condition of the mind which *substantially affects* mental or emotional processes and substantially impairs the processes and capacity of a person to control his actions." 17–A M.R.S.A. § 39(2) (1983) (emphasis added); *see* n. 2 above. Beyond removing the volitional element of the defense, the only substantive effect of the amended standard of mental disease or defect is that it elevates the proof necessary to obtain an acquittal BRI and reduces the proof necessary to obtain a subsequent release from institutional commitment. The Superior Court's finding that the petitioner at the time of the hearing still suffered from a mental disease or defect that, under the new statute, substantially impaired his cognitive capacities equates to a like finding under the old statute. The Superior Court's erroneous application of the amended section 39 to this petitioner committed to AMHI prior to the amendment was harmless error. *See State v. True,* 438 A.2d 460, 467 (Me.1981) ("highly probable that the error did not affect the judgment").

Turning to an examination of the record evidence before the Superior Court on the factual issue whether LaDew was free of mental disease or defect, we find no basis for concluding that the court acted irrationally in failing to be satisfied that LaDew had carried his burden of proof. Even though the psychiatrists testifying at the January 1987 hearing gave their opinion that LaDew did not currently suffer from what they could medically diagnose as a mental disease or defect as that term is defined in their profession, they also testified that there had been no change in LaDew's mental condition since before he was committed some 16 months earlier.

Uncontradicted testimony established that LaDew had an antisocial personality disorder manifested in repeated antisocial acts such as truancy, delinquency, running away from home, lying, thefts, and fighting. Other evaluations of LaDew, some made during his 18 prior commitments to state psychiatric care,[3] revealed more serious diagnoses of his mental condition. In his March 1986 psychological report, only ten months before the hearing, Dr. Charles Robinson found that LaDew suffered from "serious mental illness and that this mental illness continues to compromise his functioning." Dr. Robinson then recommended a "long term stretch of psychiatric treatment." In November 1984 the same clinical psychologist reported that LaDew suffered from an "Axis I schizoaffective disorder," a psychosis manifested in paranoia; in lapses into speech that was "almost meaningless, mystical, and nihilistic"; and in a belief of being possessed by spirits. Experts also testified at the hearing to the difficulty of curing such psychosis, and all agreed that an important aspect of any individual's current psychological status is his psychological history. Based on the great weight of evidence revealing LaDew's past and current psychological disorders and the absence of any improvement in his condition since he was committed at AMHI, the Superior Court was not compelled to find that LaDew had satisfactorily carried his burden of proof under 15 M.R.S.A. § 104–A with clear and convincing evidence.

The entry is:

Judgment affirmed.

All concurring.

---

**3.** The court properly allowed in evidence La-Dew's earlier psychological evaluations, since all the testifying psychiatrists agreed that a pa-

tient's past history is essential to understanding his current mental status.