Alan **ROBERTS**

v.

**COMMISSIONER OF MENTAL HEALTH AND MENTAL RETARDATION.**

Supreme Judicial Court of Maine.

Submitted on Briefs May 1, 1989.

Decided Aug. 1, 1989.

Robert E. Sandy, Jr., Waterville, for plaintiff.

Charles K. Leadbetter, Fernand LaRochelle, Assistant Attys. Gen., Augusta, for defendant.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

CLIFFORD, Justice.

Alan Roberts appeals from an order of the Superior Court (Kennebec County, *Brody, C.J.*) denying a petition for his discharge from the custody of the Commissioner of Mental Health and Mental Retardation (Commissioner). We find no error and affirm the Superior Court.

Roberts was seventeen years old when in 1982 he shot and killed Russell Spaulding in Waterville. He was initially charged with murder as a juvenile, but was later bound over for prosecution in Superior Court as an adult. *See* 15 M.R.S.A. § 3101(4) (1980 & Supp.1988).

At Roberts's jury trial in 1984 (Kennebec County, *Alexander, J.*), Dr. Charles Robinson, a psychologist, testified that at the time of the shooting, Roberts was suffering from a dysthymic disorder, described as a mental disease or defect. Dr. Charles Acker, also a psychologist, testified for the State that Roberts had a personality disorder and a substance abuse problem, but did not suffer from a mental disease or defect. The jury found Roberts not guilty by rea-

son of insanity. *See* 17–A M.R.S.A. § 39 (1983).[1]

On April 17, 1984, the Commissioner filed a special report in the Superior Court, P.L. 1979, ch. 663, § 86 (current version at 15 M.R.S.A. § 104–A (Supp.1988)), recommending the conditional release of Roberts from the Augusta Mental Health Institute (AMHI). Dr. Ulrich Jacobsohn, a psychiatrist and then Clinical Director of AMHI, concluded that Roberts did not suffer from a mental disease or defect, ruled out a dysthymic disorder in particular, and recommended his partial release from AMHI, under the supervision of the Division of Probation and Parole. A hearing on the petition was held in the Superior Court before the same justice who presided at Roberts's trial. Dr. Jacobsohn and Dr. Robinson testified at the hearing. Contrary to the testimony of Dr. Jacobsohn, Dr. Robinson testified that Roberts continued to suffer from a dysthymic disorder, but agreed with Jacobsohn and Acker that Roberts could be released subject to conditions. The court ordered Roberts's release subject to certain conditions, including psychological counseling and treatment, participation in alcohol and substance abuse programs and counseling, nonpossession of firearms, and employment.

Roberts was the subject of further court orders in July 1984 denying the State's request to revoke his release because of his failure to comply with release conditions; in September 1984 ordering him to complete a substance abuse program; and in

May 1985 ordering continuation of supervised conditional release.

In May of 1986, the Commissioner petitioned the court for Roberts's release based on Dr. Jacobsohn's opinion that Roberts was not suffering from a mental disease or defect. After hearing, the court (*Brody, C.J.*) ordered a continuation of supervised release subject to conditions. Because Roberts had been convicted of burglary and theft, the court ordered an additional condition that Roberts refrain from criminal conduct.

Roberts continued to have trouble complying with the conditions of the order of release, and spent time at the Maine State Prison when, following a physical confrontation with his wife,[2] the probation imposed for his burglary and theft conviction was revoked.

In April of 1988, under 15 M.R.S.A. § 104–A(3) (Supp.1988), the Commissioner again petitioned for the release of Roberts. Dr. Jacobsohn, now the Director of the State Forensic Service, and Dr. Owen D. Buck, Dr. Jacobsohn's successor as the Clinical Director of AMHI, as well as Roberts testified at the hearing on the petition. Both Drs. Jacobsohn and Buck testified that Roberts was not suffering from a mental disease or defect. Both testified that Roberts exhibited antisocial behavior and abused alcohol, and although he represented some danger and should be supervised,[3] there was no danger of harm to himself or anyone else as a result of a mental disease or defect.

---

1. At the time of Roberts's trial, 17–A M.R.S.A. § 39 (1983) read as follows:

    1. A defendant is not criminally responsible if, at the time of the criminal conduct, as a result of mental disease or defect, he either lacked substantial capacity to conform his conduct to the requirements of the law, or lacked substantial capacity to appreciate the wrongfulness of his conduct. The defendant shall have the burden of proving, by a preponderance of the evidence, that he lacks criminal responsibility as described in this subsection.

    2. As used in this section, "mental disease or defect" means any abnormal condition of the mind which substantially affects mental or emotional processes and substantially impairs the processes and capacity of a person to control his actions. An abnormality manifested only by repeated criminal conduct or excessive use of alcohol, drugs or similar substances, in and of itself, does not constitute a mental disease or defect.

    Section 39 has since been amended to eliminate the volitional aspects of the insanity defense. P.L.1985, ch. 796, § 5. *See LaDew v. Comm'r of Mental Health,* 532 A.2d 1051 (Me. 1987).

2. Roberts ended up pleading guilty to a charge of disorderly conduct.

3. At the time of the hearing, Roberts was on probation resulting from the burglary and theft convictions.

The court denied the petition for outright discharge and ordered the previously imposed conditions of release to be continued. The court found that Roberts was "still suffering from the mental disease or defect" that resulted in his acquittal by reason of insanity in 1984, that there was no substantial change in Roberts from his condition in 1984, and that it was not convinced that Roberts would not cause injury to himself or others due to a mental disease or defect. This appeal followed.

■ Before granting Roberts's release from the custody of the Commissioner, the Superior Court must find by clear and convincing evidence that he would not cause injury to himself or others due to a mental disease or defect. *LaDew v. Comm'r of Mental Health,* 532 A.2d 1051, 1052 n. 1 (Me.1987); *Taylor v. Comm'r of Mental Health and Mental Retardation,* 481 A.2d 139, 150 (Me.1984); 15 M.R.S.A. § 104–A(1) (Supp.1988). Roberts had the burden of proof in the Superior Court on that issue. On appeal from the court's denial of the petition for his outright release, Roberts must demonstrate that the court was compelled to find to a high degree of probability that he was not suffering from a mental disease or defect, or that he did not pose a danger to himself or others as a result of a mental disease or defect. *LaDew,* 532 A.2d at 1054; *Taylor,* 481 A.2d at 153. Roberts argues that the testimony of Drs. Jacobsohn and Buck at the release hearing was uncontradicted and compelled a finding that he did not suffer from a mental disease or defect. We disagree.

■ Even assuming that the court could consider no evidence other than uncontradicted psychiatric testimony presented at the hearing, the court is not required to accept such expert psychiatric testimony. *State v. Boone,* 444 A.2d 438, 444 (Me. 1982). Whether Roberts suffered from a mental disease or defect[4] is ultimately a legal, as opposed to a medical, determination to be made by the court. *In re Fleming,* 431 A.2d 616, 618 (Me.1981).

■ Moreover, contrary to Roberts's contention, the court was not limited to the testimony presented at the release hearing last in time. The court is entitled to rely on testimony presented at Roberts's trial and at earlier release hearings, as well as earlier psychiatric evaluations. *LaDew,* 532 A.2d at 1054. That evidence included the testimony of Dr. Robinson, who at the trial and at a previous release hearing testified that Roberts suffered from a dysthymic disorder, a mental disease or defect.

■ At Roberts's trial in 1984, a jury made a determination that he suffered from a mental disease or defect. There was substantial evidence, including testimony from Dr. Jacobsohn and Dr. Buck, that Roberts's condition had not changed substantially since his trial. The record in this case did not compel the court to find to a high probability that Roberts no longer suffered from a mental disease or defect.

Although Dr. Buck testified that Roberts posed only a low-risk danger, the court was not convinced that Roberts would not cause injury to himself or others due to his mental disease or defect. On this record, the court was not compelled to find otherwise.

The entry is:

Judgment affirmed.

ROBERTS, WATHEN, GLASSMAN and COLLINS, JJ., concurring.

HORNBY, Justice, dissenting.

In 1984 a jury acquitted Alan Roberts of a 1982 homicide by reason of mental disease or defect, and he was committed to AMHI. *See* 15 M.R.S.A. § 103 (1980). AMHI physicians, however, have never believed that he has or had a mental disease or defect. Now, after some conditional releases and a previously rejected recommendation for discharge, AMHI once again seeks his complete discharge from its custody. The State presented AMHI's recommendation to the Superior Court with two State-employed psychiatrists testifying that

---

**4.** *See supra* note 1 for the definition of mental disease or defect in effect at the time of the incident.

Roberts has no mental disease or defect. The State presented *no* evidence that Roberts has any current mental disease or defect. Under these circumstances, since the Maine Legislature has provided that antisocial behavior alone is not enough but instead has required the continued existence of a mental disease or mental defect as a condition to continuing commitment, I would vacate the Superior Court's order and direct that Roberts be discharged from AMHI custody.[1]

The Legislature has directed that the head of AMHI forward annually to the Commissioner of Mental Health & Mental Retardation a staff psychiatrist's opinion concerning the mental condition of anyone committed for mental disease or defect. The opinion must state "specifically whether he may be released or discharged without likelihood that he will cause injury to himself or to others due to mental disease or mental defect," along with "the reasons for the opinion." 15 M.R.S.A. § 104–A (Supp.1988). The Commissioner must then file the report in Superior Court. That court must review the report and, if release or discharge is recommended, set a hearing on the issue. Notice and a copy of the report must be given to the Attorney General, the District Attorney's office that prosecuted the criminal charge and any District Attorney's office where the release petition is filed or where the release may occur. The Legislature has specified that at the hearing the court must receive testimony from at least one psychiatrist who has treated the individual, a member of the State Forensic Service who has examined the person, any independent psychiatrist or licensed clinical psychologist employed by the prosecutor who has examined the person and any other relevant testimony. Then, after hearing, the court must determine whether the individual "may be released or discharged without likelihood that he will cause injury to himself or to others *due to mental disease or mental defect."* *Id.* (emphasis supplied).

In this case, the Commissioner of Mental Health & Mental Retardation has sought Roberts' discharge under the statute pursuant to an AMHI staff psychiatrist's opinion. We have said that such a proceeding is "a type of original proceeding"—"not a part of the criminal case that resulted in the commitment." *Taylor v. Comm'r of Mental Health,* 481 A.2d 139, 145 (Me. 1984). At the hearing on the petition held in August of 1988 the director of the State Forensic Service, Dr. Jacobsohn, testified; the clinical director and Roberts' treating psychiatrist at AMHI, Dr. Buck, testified; and Roberts testified. The prosecutors who were notified of the hearing did not submit testimony from any other psychiatrists or psychologists although the court invited the Attorney General to submit the testimony of Dr. Robinson, the defense expert who had testified at Roberts' trial and persuaded the jury that Roberts had a mental disease or defect at the time of the crime. Drs. Jacobsohn and Buck (both of whom had recently treated or examined Roberts) testified that Roberts was *not* suffering from a mental disease or defect. That was the only testimony presented on his condition. On this record, Roberts should have been discharged on the Commissioner's request under the statute. Nevertheless, this Court upholds the Superior Court's order denying discharge and finding that Roberts now suffers from a mental disease or defect.

The Court's reasoning that Roberts failed to meet his burden of proof will not suffice.[2] It is not simply that the only two

---

1. In fact, Roberts already lives in the community, subject only to AMHI supervision that entails continuing counselling sessions and outpatient substance abuse treatment, attending regular Alcoholics Anonymous meetings, not possessing drugs or alcohol, routine drug and alcohol testing, not possessing or using firearms, maintaining employment and refraining from criminal conduct.

2. Interestingly, the process here was initiated by the Commissioner, not by Roberts. In *Taylor v. Comm'r of Mental Health,* 481 A.2d 139, 144 n. 6 (Me.1984), we recognized that the statute fails to provide an express declaration of who bears the burden of proof. There, the inmate had brought the release petition and we imposed the burden of proof upon him as the moving party "as in any other civil proceeding." Although the issue was not before the court we went on to

psychiatrists to testify stated that Roberts has no mental disease or defect; *these were the representatives of Roberts' ostensible adversary, the State.* No one testified to the contrary. Instead, the Attorney General's office advised the Superior Court through its representative: "Mr. Roberts has been in the custody of these people, they have seen him, I have confidence in their ability," and again, "I do reiterate the fact I do have confidence in Dr. Jacobsohn's medical evaluation in this case," and yet again, "I have to be forthright with the Court and tell you that I really have confidence in Dr. Jacobsohn and I do have confidence in Dr. Buck." If this does not meet the burden of proof in civil litigation, what will? Instead, Roberts is faced with the catch–22 that Drs. Jacobsohn's and Buck's testimony that he has always been sane becomes transmuted into evidence that he is still insane.[3] Put another way, the only means Roberts has to satisfy a trial justice under the Court's reasoning is to have the original Dr. Robinson testify that his condition has changed or to find some other doctor who could testify both that he is sane now and that he was insane at the time of the offense. Testimony that he is not now insane, no matter how persuasive, apparently will never suffice for Roberts.[4] That is more than a burden of proof. That amounts to laying down a condition for

discharge beyond what the Legislature has adopted.

Apparently either the jury and Dr. Robinson were wrong on Roberts' mental condition or AMHI personnel were and are wrong. No one would be happy with a system whereby AMHI could turn around and release someone whom a jury acquitted by reason of insanity simply because AMHI personnel did not agree with the jury. But that is not the system the Legislature has provided. Instead, ample opportunity is afforded the prosecutors—the Attorney General, the District Attorney in the location where Roberts will be released, the District Attorney in the location where the petition is filed, and the District Attorney who originally prosecuted—to present evidence that someone like Roberts continues to have a mental disease or defect. Here, however, the State through its various officials chose not to present any such evidence for the court to consider but only the AMHI reports and testimony supporting discharge. Indeed, the Attorney General's office did not even oppose the release in the trial court (the District Attorney for Prosecutorial District IV did file a letter saying he wanted to oppose the discharge and once sought a continuance of the hearing, but did not participate further) and the brief on appeal is hardly that of an advocate supporting the judgment entered below.[5] We must conclude either that there

---

add that the burden lay with "the acquittee, whether he is the petitioner *or only the person on whose behalf the proceeding is undertaken*" (emphasis supplied). This position creates some difficulty. It is not entirely clear that the Commissioner undertakes a proceeding such as this only on behalf of the inmate. When the Commissioner believes that an inmate has no mental disease or defect and cannot be treated for one, his interest may be an independent State interest in freeing up scarce resources, and perhaps the burden of proof should lie with the Commissioner as the moving party. But then who is the commissioner's opponent? Or, in this case, who is Roberts' opponent? Under either approach, since Roberts and the Commissioner were the only two parties and since neither had any adversary submitting evidence at the hearing, burden of proof principles are difficult to apply and certainly do not serve to "allocate the risk of error between the litigants." 481 A.2d at 151 (speaking of choice of standard of proof).

3. The Court's reasoning seems to be: Dr. Robinson testified in 1984 that Roberts was then insane; Drs. Buck and Jacobson testified in 1988 that Roberts is now sane, just as he was in 1984; therefore Roberts can be considered insane in 1988.

4. As the trial justice stated:

> I would like someone to come in and say, and I doubt that I will ever get that testimony, that he was sick and now he is better and I would feel better in releasing him, and under the terms of this statute, I have never had that kind of testimony and probably never will.

5. The brief argues that "it *may* be possible for this court to conclude that the hearing justice below did not act irrationally...." and concludes only that "*if* this court concludes that the hearing justice below did not act irrationally ..., then the Appellant's appeal should be denied" (emphasis supplied).

is no available evidence of a current mental disease or defect or that the State chooses not to present it.[6] The first conclusion compels Roberts' discharge under the statute; the second raises important questions about the comparative roles of court and prosecutor. I do not believe it is the court's role to seek out information the prosecutor has failed to provide in such circumstances any more than we tell prosecutors which cases to pursue and which ones to ignore. The dilemma cannot be resolved by focusing on Dr. Robinson's 1984 testimony in deciding whether Roberts has a mental disease or defect in late 1988.[7] The State did not present that testimony to the court as germane to Roberts' current condition. We would not in any other context ignore uncontradicted current psychiatric testimony in favor of four-year old opinions not advanced by any party.[8]

In short, the Maine Legislature has directed that someone committed to AMHI because of acquittal by reason of insanity can be kept there only if the evidence shows that he continues to suffer from a mental disease or defect. Although the jury may have erred in its 1984 finding in the criminal case concerning Roberts, we cannot use that finding to justify keeping him at AMHI in the absence of reasonably current psychiatric or psychological opinion that he has a mental disease or defect now. As this Court said in *Taylor*, "the court proceeding on [the] petition for release is not a part of the criminal case that resulted

in his commitment; it rather is a type of original civil proceeding." 481 A.2d at 145. The State, through the Attorney General or the District Attorneys, has the obligation to present relevant testimony to the court in this proceeding. Where the State concludes that its interests[9] will not be furthered by continued commitment and chooses instead to present only testimony that demonstrates sanity, it is not the court's role to make the case for mental disease or defect on its own.

---

6. At the close of the hearing, the following colloquy occurred:

    MR. LaROCHELLE: Well, as I said, I am perfectly willing to talk with Dr. Robinson, and if at least in my statements he would be in a position to provide the Court with useful testimony, I could make you aware of that and you could reopen the matter.

    THE COURT: I appreciate that. I will be taking this matter under advisement anyway, because I have some rather serious questions that I have to come to grips with.

    No testimony from Dr. Robinson was ever provided.

7. There has been no further testimony from that expert (Dr. Robinson) since April of 1984, almost four and one-half years before the Superior Court's order in this case.

8. This case is unlike *LaDew v. Comm'r of Mental Health*, 532 A.2d 1051 (Me.1987), where we permitted consideration of previous psychological evaluations that were both submitted into evidence and much more recent (one being only ten months before the hearing). 532 A.2d at 1055.

9. Under the statute only antisocial behavior that results from mental disease or mental defect justifies continuing custody at AMHI. The State's expert, Dr. Buck, testified that "our job is to treat mental illness, and Mr. Roberts doesn't have a mental illness, he has a personality disorder." The State would have preferred to have Roberts under probation and parole supervision in connection with a disorderly conduct conviction.