MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2016 ME 186
Docket:       Ken-16-21
Argued:       November 9, 2016
Decided:      December 22, 2016

Panel:        SAUFLEY, C.J., and MEAD, GORMAN, HUMPHREY, and CLIFFORD, JJ.

JASON BEGIN

v.

STATE OF MAINE

GORMAN, J.

[¶1]   Jason Begin appeals from a judgment of the Superior Court (Kennebec County, *Marden, J.*) denying his petition for release from the custody of the Department of Health and Human Services, to which he was committed in 2004 based on a finding that he was not criminally responsible for certain crimes by reason of insanity.  Begin argues that the court erred by continuing the final hearing on his petition, excluding evidence at that hearing, and issuing a decision in the absence of any testimony from an independent psychiatrist.  He also challenges the sufficiency of the evidence supporting the court's determination that he is not entitled to release pursuant to 15 M.R.S. § 104-A (2015).  We affirm the judgment.

## I. BACKGROUND

[¶2]  In 2003, Begin was charged with theft and violation of a condition of release, for which the Superior Court (Androscoggin County, *Delahanty, J.*) found him not criminally responsible by reason of insanity (NCR) in 2004. *See* 15 M.R.S.A. § 103 (Supp. 2002); 17-A M.R.S.A. § 39 (Supp. 2003).[1]  Begin was placed in the custody of the Commissioner of the Department of Health and Human Services and committed to the Riverview Psychiatric Center.[2] *See* 15 M.R.S.A. § 103.

[¶3]  Between 2005 and 2015, Begin filed in the Superior Court (Kennebec County) a series of petitions for modified release treatment orders seeking further institutional privileges.  *See* 15 M.R.S. § 104-A(2).  In the resulting orders, Begin was granted some additional privileges, and periodically also had his privileges suspended or revoked.  Eventually, by

---

[1]  Title 17-A M.R.S.A. § 39, which sets out the affirmative defense of insanity, has been amended since the court issued its NCR judgment.  P.L. 2005, ch. 263, §§ 5, 6 (effective Sept. 17, 2005) (codified at 17-A M.R.S. § 39 (2015)).  Nevertheless, the operative language of section 39 on which we rely in this case is identical in the 2003 and 2015 versions of the statute.

Section 103 details the procedure for commitment after an NCR judgment is entered.  15 M.R.S. § 103 (2015).  When the NCR judgment was entered in this matter, 15 M.R.S.A. § 103 (Supp. 2002) was in effect.  Section 103 has been amended on several occasions since 2004, *e.g.*, P.L. 2013, ch. 424, § B-3 (effective July 16, 2013), but the substance of section 103 is not at issue in this appeal.

[2]  The Department of Behavioral and Developmental Services was incorporated into the Department of Health and Human Services shortly before Begin's NCR judgment was entered in 2004.  P.L. 2003, ch. 689, § B-1 (effective July 1, 2004); *see Beal v. State*, 2016 ME 169, ¶ 2 n.1, --- A.3d ---.

order dated October 3, 2013, the court (*Murphy, J.*) allowed Begin to enter a group residential program with continuing outpatient services from Riverview.

[¶4]  On July 29, 2015, Begin filed the petition now at issue, requesting "a hearing on [his] fitness for release and return to permanent residency in the community pursuant to Title 15 §104-A (1) and (2)."  The court (*Marden, J.*) conducted a hearing at which it admitted numerous exhibits and the testimony of a Riverview staff psychiatrist, a psychiatric nurse practitioner, Dr. Debra Baeder of the State Forensic Service, four mental health workers, a detective sergeant with the Augusta Police Department, two of Begin's employers, an elder in Begin's church, and Begin's mother.

[¶5]   The court made the following factual findings, which are supported by competent record evidence.  Begin, who was raised by a grandmother with schizophrenia, began exhibiting antisocial and psychotic symptoms at an early age.  Since childhood, he has been diagnosed with schizophrenia, attention deficit hyperactivity disorder, post-traumatic stress disorder (PTSD), major depressive disorder, oppositional defiant disorder, mixed developmental disorder, bipolar affective disorder, evasive developmental disorder, Asperger's Syndrome, borderline mental retardation,

major depressive disorder, pedophilia, cannabis abuse, and personality disorder not otherwise specified.

[¶6] Although Begin denies having any violent tendencies, he has a history of perpetrating physical and verbal violence when his wishes are not met. In one such incident on January 12, 2015, Begin's outpatient services team confronted him about suspected marijuana use or distribution. After Begin realized that the team intended to send him to Riverview while they investigated the reports, Begin brandished a knife and slashed his own arm. When Begin then "appeared to be attempting to assault" a police officer who was there to escort Begin to Riverview, the police officer shot Begin; Begin was hospitalized for some time for the injuries he incurred.

[¶7] The court found that Begin "has no primary psychotic disorder," but, as a symptom of his PTSD, he experiences "tangent psychotic or quasi psychotic symptoms" when confronted with severe stress. In the midst of such reactions, Begin experiences "a high degree of cognitive distortion" and can no longer realistically or rationally perceive the circumstances. Based on the recommendations of Riverview staff and the State Forensic Service, the court denied Begin's request for release and instead reinstated the terms of the October 3, 2013, order allowing him to return to the group home as long

as he could first demonstrate "an acceptable period of behavioral stability" at Riverview. Begin appeals.

## II. DISCUSSION

[¶8] When a person is found not guilty by reason of insanity, *see* 17-A M.R.S. § 39 (2015), he is committed to the custody of the Commissioner of the Department of Health and Human Services "to be placed in an appropriate institution for the care and treatment of persons with mental illness or in an appropriate residential program," 15 M.R.S. § 103 (2015). *See Taylor v. Comm'r of Mental Health & Mental Retardation*, 481 A.2d 139, 142 (Me. 1984). When the acquittee seeks release or discharge from Department custody,[3] it is the acquittee's burden to establish, by clear and convincing evidence, that he "may be released or discharged without likelihood that [he] will cause injury to [himself] or to others due to mental disease or defect." 15 M.R.S. § 104-A(1), (3); *see Beal v. State*, 2016 ME 169, ¶ 5, --- A.3d ---; *James v. State*, 2015 ME 111, ¶ 8, 121 A.3d 1290. We have imported into title 15 the

---

[3] "Release" refers to a "termination of institutional inpatient residency and return to permanent residency in the community," and is ordered with conditions for outpatient treatment and supervision, and for return to the institution upon violating the conditions of release. 15 M.R.S. § 104-A(1)(A) (2015); *see Beal*, 2016 ME 169, ¶ 2 n.2, --- A.3d ---; *Taylor v. Comm'r of Mental Health & Mental Retardation*, 481 A.2d 139, 143-44 (Me. 1984). A "discharge" refers to an "outright discharge" from the custody of the Commissioner without conditions. 15 M.R.S. § 104-A(1)(B) (2015); *Taylor*, 481 A.2d at 142; *see Beal*, 2016 ME 169, ¶ 2 n.2, --- A.3d ---. In this case, Begin purported to seek only release. The procedure and burden of proof are the same for both discharge and release. 15 M.R.S. § 104-A(1).

6

definition of "mental disease or defect" set forth in the criminal statute according to which an NCR judgment is issued—that is, 17-A M.R.S. § 39(2), which defines "mental disease or defect" as "only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality."[4]  *Beal*, 2016 ME 169, ¶ 7, --- A.3d ---; *Green v. Comm'r of Mental Health & Mental Retardation*, 2000 ME 92, ¶ 27, 750 A.2d 1265.

[¶9]  In short, as the petitioning acquittee, it was Begin's burden to demonstrate, by clear and convincing evidence, that he is no longer dangerous to himself or others as a result of a mental disease or defect.  *See* 15 M.R.S. § 104-A(3); *Beal*, 2016 ME 169, ¶ 5, --- A.3d ---; *James*, 2015 ME 111, ¶ 9, 121 A.3d 1290; *In re Beauchene*, 2008 ME 110, ¶¶ 7, 9, 951 A.2d 81; *Green*, 2000 ME 92, ¶ 12, 750 A.2d 1265.   Begin challenges the court's determination that he did not meet this burden.  Because Begin was the

---

[4]  The procedural aspects of the release or discharge proceeding are governed by 15 M.R.S. § 104-A (2015), the current version of the statute.  *See James v. State*, 2015 ME 111, ¶¶ 2, 4, 121 A.3d 1290 (applying the 2014 version of section 104-A to a 2007 NCR judgment); *Michaud v. N. Me. Med. Ctr.*, 436 A.2d 398, 400 (Me. 1981) (holding that amendments to procedure apply to both pending and future matters).  The trial court, and we, are bound to apply the definition of "mental disease or defect" that existed at the time the NCR judgment was entered, however, *In re Beauchene*, 2008 ME 110, ¶ 10, 951 A.2d 81, and therefore it is technically the version of section 39 that was in effect at the time that Begin's NCR judgment was entered—17-A M.R.S. § 39(2) (Supp. 2003).  Because the definition of "mental disease or defect" in section 39(2) has remained constant since 1985, P.L. 1985, ch. 796, § 5 (effective July 16, 1986), the 2015 version of section 39(2) is identically applicable.

unsuccessful party with the burden of proof at trial, he can prevail on any such factual challenge on appeal only if we conclude that, viewing the evidence and all reasonable inferences in the light most favorable to the court's judgment, the trial court nevertheless was compelled to find in his favor. *See Beal*, 2016 ME 169, ¶ 6, --- A.3d ---; *In re Williams*, 2010 ME 121, ¶ 10, 8 A.3d 666; *Green*, 2000 ME 92, ¶¶ 30-31, 750 A.2d 1265.

[¶10] Multiple mental health professionals testified that Begin suffers from a severe form of PTSD that causes him, when stressed, to exhibit psychotic behaviors accompanied by cognitive distortions that render him both unable to discern reality and prone to violence. This evidence supports the court's findings that Begin is a danger to himself or others as a result of his mental disease or defect. In fact, the legal definition of "mental disease or defect" expressly refers to an impairment of the ability to perceive reality, from which the court found Begin suffers when he is under severe stress. 17-A M.R.S.A. § 39(2) (Supp. 2003); *see* 17-A M.R.S. § 39(2) (2015). Begin's dangerousness is also amply supported by the evidence of numerous incidents in which he has threatened himself or others—most notably, by the incident that occurred just last year in which he brandished a knife, slashed his own arms, and lunged at a police officer.

8

[¶11]  Contrary to Begin's suggestion, a "mental disease or defect" does not refer to any particular diagnosis on any particular psychiatric axis.  *See, e.g.*, *Beal*, 2016 ME 169, ¶ 8, --- A.3d --- (discussing acute episodes in which the acquittee was not fully able to assess reality and suffered from cognitive distortions, a personality disorder, and encephalopathy); *Beauchene*, 2008 ME 110, ¶ 6, 951 A.2d 81 (personality disorder); *Green*, 2000 ME 92, ¶ 4, 750 A.2d 1265 (bipolar disorder and poly-substance abuse); *Roberts v. Comm'r of Mental Health & Mental Retardation*, 562 A.2d 680, 682-83 (Me. 1989) (antisocial behavior, dysthymic disorder, and alcohol abuse); *LaDew v. Comm'r of Mental Health & Mental Retardation*, 532 A.2d 1051, 1055 (Me. 1987) (antisocial personality disorder and schizoaffective disorder).  That the acquittee is "asymptomatic" or that he is "no longer in the same state as existed at the time of [his] crime" also does not necessarily establish the absence of a mental disease or defect.  *Green*, 2000 ME 92, ¶¶ 28, 31, 750 A.2d 1265 (concluding that the court's finding of a continuing mental disease or defect was supported even though the acquittee had not had symptoms for months).

[¶12]  Although Begin points to evidence of his stable mental state and lack of dangerousness, the court simply was not required to believe Begin's

proffered testimony. *See Roberts*, 562 A.2d at 683; *Dionne v. LeClerc*, 2006 ME 34, ¶ 15, 896 A.2d 923. Indeed, the trial court may conclude that the acquittee has not met his burden even when all the testifying professionals opine that he no longer suffers from a mental disease or defect. *Roberts*, 562 A.2d at 683 (stating that the court is free to reject even uncontradicted psychiatric evidence); *see also LaDew*, 532 A.2d at 1055. As we have explained, whether the acquittee suffers from a mental disease or defect "is ultimately a legal, as opposed to a medical, determination to be made by the court." *Green*, 2000 ME 92, ¶¶ 28, 31, 750 A.2d 1265 ("The crux of the issue . . . is not whether the acquittee must be ill in the medical sense, but whether his mental state fits a constitutionally valid legal definition." (quotation marks omitted)); *see Beal*, 2016 ME 169, ¶ 6, --- A.3d ---.

[¶13] We conclude that the trial court was not compelled to find in Begin's favor on his petition for release.[5]

---

[5] We are also not persuaded by Begin's additional contentions, that the court's procedure for considering his petition violated his substantive and procedural due process rights, *see Green v. Comm'r of Mental Health & Mental Retardation*, 2000 ME 92, ¶¶ 14, 16, 20, 24, 750 A.2d 1265; that the court erred by granting the State's motion to continue the final hearing on Begin's petition, *see Daud v. Abdullahi*, 2015 ME 48, ¶¶ 5-10, 115 A.3d 77; that the court was precluded from denying his petition in the absence of the testimony of an independent psychologist or psychiatrist, *see* 15 M.R.S. § 104-A; 34-B M.R.S. § 1212(2)(B) (2015); *James*, 2015 ME 111, ¶ 3, 121 A.3d 1290; *Roberts v. Comm'r of Mental Health & Mental Retardation*, 562 A.2d 680, 682-83 (Me. 1989); or that the court erred by excluding anecdotal testimony regarding another Riverview patient who was released from Department custody, *see* M.R. Evid. 401; *State v. Adams*, 2015 ME 30, ¶ 11, 113 A.3d 583; *State v. York*, 564 A.2d 389, 390 (Me. 1989).

The entry is:

Judgment affirmed.

---

Rory A. McNamara, Esq. (orally), Drake Law, LLC, Lebanon, for appellant Jason Begin

Maeghan Maloney, District Attorney, and David M. Spencer, Asst. Dist. Atty. (orally), Kennebec County District Attorney, Augusta, for appellee State of Maine

Kennebec County Superior Court docket number CV-2005-150
FOR CLERK REFERENCE ONLY