STATE of Maine

v.

**Elmer HUTCHINS a/k/a John Ford.**

Supreme Judicial Court of Maine.

Argued May 12, 1981.

Decided Aug. 13, 1981.

---

John R. Atwood, Dist. Atty., Patricia Goodridge Worth (orally), Asst. Dist. Atty., Rockland, for plaintiff.

Harmon, Jones & Sanbord, Robert C. Perkins (orally), Camden, for defendant.

Before McKUSICK, C. J., and WERNICK, NICHOLS, ROBERTS and CARTER, JJ.

McKUSICK, Chief Justice.

Tried before a jury in Superior Court, Knox County, defendant Elmer Hutchins, whose legal name is John Ford, was convicted of aggravated assault under 17–A M.R.S.A. § 208 (1980 Supp.). The assault occurred on March 10, 1977, at the Maine State Prison, when prison guard Linwood Olson was struck by a brick dropped from the third floor window of the prison's upholstery shop. The blow fractured Olson's skull.

The State's key witness at trial was prisoner Roy Taylor, who was in the upholstery shop before, during, and after the incident. Taylor testified that he watched defendant, who was also a prisoner, carry a brick to an open window and then return empty-handed from the window to his workbench beside Taylor. Defendant thereupon informed him, Taylor said, that he had dropped the brick on a guard.

Testifying in his own behalf, defendant told the jury that he had at first intended to drop the brick on a guard's head, but in fact had not done so. He said that after leaning out the window with the brick in his hand, he had lost his nerve; instead of dropping it he had simply left it on the window's outer sill. Defendant denied telling Taylor anything to the contrary. Fellow prisoner Barry Colby, who, according to Taylor, was present when defendant admitted the assault, testified that he had neither heard nor seen anything implicating defendant.

Defendant claims the Superior Court erred 1) by admitting in evidence a photograph of the crime scene that the State had failed to make available to defendant ahead of trial, despite a specific request for and a court order compelling discovery of any such photograph, and 2) by refusing to dis-

miss the indictment on the ground the prosecution's 32-month delay in going to the grand jury violated his due process rights. We deny his appeal.

## I.

Despite defense counsel's repeated requests for discovery pursuant to M.R. Crim.P. 16(b), the State delayed disclosing a photograph taken in the prison yard until the day that trial began. The photograph depicts the upholstery shop window from which the brick fell and the area below the window where guard Linwood Olson was struck.

Months before the trial, defendant had filed a request for discovery of all documentary materials, including photographs, intended for use as evidence in the State's case-in-chief. This request was followed by a letter to the district attorney inquiring whether any photographs of the scene of the crime had been taken and inadvertently omitted from the State's discovery package. On February 12, 1980, the Superior Court issued an order compelling discovery of, among other items, "[a]ll photographs of the upholstery shop and surrounding environment."

The State had told defendant no such photograph existed. The prosecuting attorney was unaware of the photograph until the morning that trial began. At that time she showed it to defense counsel, advising him she would seek to admit it. Alerted to defendant's imminent objection, the presiding justice promptly heard argument in chambers concerning sanctions for the State's violation of the discovery rule. Defendant there argued unsuccessfully that the photograph should be excluded from evidence. He renews those arguments on appeal, asserting that the photograph "highlighted" one element of the physical scene, while its tardy disclosure precluded him from obtaining similar photographs to highlight others.

■ We condemn the State's failure to provide prior access to a picture that apparently was taken by the very investigator who regularly reported to the district attorney's office in this case. Where, as here, that office receives a written request for material discoverable under M.R.Crim.P. 16(b)(2), it is not enough merely to check the files within its immediate control; the office has an affirmative duty to inquire of all investigators on the case whether they have, or intend to obtain, any of the material requested. In *State v. Bishop*, Me., 392 A.2d 20, 26 (1978), we said:

> [W]e cannot emphasize too strongly the necessity for prosecutors to set up and maintain a system for routine and timely disclosure to defense counsel of the information listed in subdivision (a)(1).

No less than it applies to material automatically discoverable under subdivision (a)(1), our observation in *Bishop* applies to material discoverable upon written request under subdivision (b)(2) of M.R.Crim.P. 16.

■ Despite the State's violation of the rules of discovery, however, the presiding justice did not abuse his discretion in refusing to impose the sanction of nonadmissibility. The photograph did not add to or subtract from the proof on any issue in dispute. *Cf. State v. Thurlow*, Me., 414 A.2d 1241, 1244–45 (1980) (appeal sustained where undisclosed policeman's report went to critical issue of the defendant's criminal intent). It was used demonstratively, in no sense purporting to give a particular view or perspective. It illustrated and made more readily understandable the oral testimony given by the witnesses. Albeit assured before the day of trial that photographs of the area in or around the upholstery shop were not in the State's possession, defense counsel concededly anticipated the State's use of some kind of visual aid. The exterior wall of the upholstery shop depicted in the photograph was a scene well known to defendant and his counsel, defendant having lived there, and his counsel from having viewed it. Finally, and most importantly, the only sanction that defense counsel urged upon the court was exclusion of the photograph from evidence. Had the opportunity to reflect on the significance of the photograph or to obtain comparable pictures been essential to his defense, counsel could have requested additional time or a continuance as permitted as an alternative sanction under M.R.Crim.P. 16(d). That he

did not do. As is, we can find no error in the Superior Court's ruling. *See State v. LeClair*, Me., 382 A.2d 30 (1978).

## II.

The assault for which defendant was convicted occurred on March 10, 1977. The indictment was returned on November 7, 1979. Asserting that the delay of nearly 32 months caused the loss of witnesses needed for his defense, thereby depriving him of his constitutional rights of due process, defendant moved to dismiss the indictment. After a pretrial hearing the court denied defendant's motion.

The key "lost witnesses" were Kim Charbonneau, Kenneth Denneault, and John Carr, prisoners at the time of the aggravated assault who had since been released. Defendant contends that if those three men had been able to testify, he could have forced them either to admit that they were at the open window of the upholstery shop seconds after the brick was dropped or to deny their presence at the window in face of a guard's testimony expressly placing them there. Given defendant's own testimony that, although he did not actually drop the brick, he left it on the outer sill of a window from which another might have dropped it, the alleged unavailability of those men assertedly damaged defendant's ability to raise a reasonable doubt about his guilt.[1]

In *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), the

Supreme Court recognized that, although statutes of limitation provide the primary guaranty against a citizen's being subjected to overly stale criminal charges, the Due Process Clause has a limited role to play in protecting defendants against oppressive delay. Just how limited that role is became the primary subject of the Court's successor opinion, *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). Confronted with the dismissal of an indictment found by the court of appeals to have been unjustifiably delayed by more than eighteen months, the *Lovasco* majority reversed the lower court, holding that 1) "proof of prejudice is generally a necessary but not sufficient element of a due process claim," *id.* at 790, 97 S.Ct. at 2048 and 2049, and 2) prosecutors are not constitutionally obligated to file charges the moment they have assembled evidence of guilt. Expanding on the second point, the Court stated:

> Rather than deviating from elementary standards of "fair play and decency," a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of "orderly expedition" to that of "more speed," . . . .

*Id.* at 795, 97 S.Ct. at 2051.

Here, the State points out that it could not be satisfied of its ability to establish

---

1. Charbonneau, Denneault, and Carr were among the prisoners interviewed by an investigator within one week of the crime. Copies of the statements obtained at that time were attached to a supplemental affidavit in support of the motion to dismiss. According to the statements, Charbonneau claimed to have been in the print shop, an area adjacent to the upholstery shop, at the time the brick was dropped. Denneault stated that he had been in and was leaving the paint shop with Carr when he saw guards running to the upholstery shop, whereupon he "walked to the area and found two officers carrying Officer Olson on a stretcher." In other words, Dennault presumably went into the upholstery shop and looked out a window in time to see the victim being carried away. Carr's statement was similar to but more confusing than Denneault's.

The anticipated impeachment of these men came from trial testimony of guard Laurens Adams. At the time of the assault, Adams was stationed on the north post of the "wall" overlooking the prison yard. Adams testified that he saw the brick drop from the window; that he immediately ran to an observation room and telephoned the deputy warden's office to report that a guard was hurt; that he then trained binoculars on the window from which the brick had fallen; and that there he saw Charbonneau, Denneault, and Carr. The time from the moment of catching sight of the falling brick to the moment of seeing the three prisoners was claimed to have been no more than ten seconds.

guilt beyond a reasonable doubt because its key witness, prisoner Roy Taylor, refused to testify for over two years after the assault. He was cowed by neither a subpoena nor by a possible perjury charge, for he informed a state police investigator in March 1977 that if forced to be a witness he would lie on the stand. Defendant counters that, regardless of Taylor's intransigence, virtually all of the evidence presented at trial, including Taylor's eyewitness account of defendant's actions, was obtained within a week of the assault; under those circumstances, defendant suggests, instead of suspending work on the case in the passive hope that Mr. Taylor might undergo a change of mind, the State had a positive duty to maintain persistent contact with Taylor in order to be ready should he become cooperative.[2]

This case does not turn, however, on the explanation for the pre-indictment delay. Whether the State's course of action was an impermissible departure from those standards of "fair play and decency" that constitute the cornerstone of our judicial system we need not decide, for defendant has failed to show that the State's delay caused any prejudice to his defense.[3]

■ Before the prosecution is under any obligation to come forward with evidence explaining its delay, the burden is on the defendant to make out a prima facie case of actual and unjustifiable prejudice. *See, e. g., United States v. Lovasco, supra* ; *United States v. Lieberman*, 608 F.2d 889, 902 (1st Cir. 1979), *cert. denied*, 444 U.S. 1019, 100 S.Ct. 673, 62 L.Ed.2d 649 (1980). The ulti-

mate burden of persuasion remains with the defendant, *e. g., United States v. Comosona*, 614 F.2d 695, 696–97 (10th Cir. 1980), and actual prejudice must be established at the threshold, *e. g., United States v. Marino*, 617 F.2d 76, 83–84 (5th Cir.), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980).

■ In the case at bar, defendant is far from convincing in claiming that the three "lost witnesses" were in fact unavailable. Although he evidently believed at the time of his pretrial hearing that Denneault had died and Carr could not be located, the record reveals that he subsequently sought subpoenas for a John Carr of Portland and a Kenneth Denneault of Haverhill, Massachusetts. Even if we assume that the three men were unavailable, defendant has failed to show that the pre-indictment delay caused their unavailability. We are not told when they were released from Maine State Prison. If they were released soon after the crime was committed, they could have become unavailable even if defendant had been indicted within a short period. *See United States v. Mills*, 641 F.2d 785, 789 (9th Cir. 1981); *Commonwealth v. Best*, —— Mass. ——, ——, 411 N.E.2d 442, 450–51 (1980).

Since defendant has failed to carry his burden of establishing a causal connection between the 32-month delay and any actual prejudice to his defense, the entry must be:

Judgment affirmed.

All concurring.

---

2. Taylor told an investigator shortly after the crime that, because a court appearance would endanger his life within the Maine State Prison, he would not testify to defendant's guilt unless he could obtain a transfer to an out-of-state prison. When Taylor learned that a transfer was impossible, he refused to testify.

The State had occasion to interview Taylor again in June 1979 on a matter unrelated to the March 1977 assault. Although Taylor declared at that time he might be willing to testify regarding the assault, he apparently again imposed a condition. Not until September 1979 did Taylor agree to testify without conditions.

3. We stress in passing that a wide range of discretion must be left to the prosecutor in determining when to go to the grand jury. See

the discussion of the policy underlying this principle in *United States v. Lovasco, supra*, at 792–95, 97 S.Ct. at 2049–51. There is no allegation here that the State acted in "reckless disregard of circumstances ... suggesting ... an appreciable risk that delay would impair ... the defense," *id.* at 795 n. 17, 97 S.Ct. at 2051 n. 17, much less a claim that the delay was intentionally designed to secure a "tactical advantage" over the defendant. *United States v. Marion, supra*, 404 U.S. at 325, 92 S.Ct. at 466. Even assuming that a good faith delay in bringing an indictment *could* be constitutionally unjustified, separation of powers concerns would give us pause in substituting our judgment for that of the prosecutor.