STATE of Maine

v.

Paul A. VANASSCHE.

Supreme Judicial Court of Maine.

Argued Nov. 2, 1989.

Decided Nov. 29, 1989.

Paul Aranson, Dist. Atty., Laurence Gardner, Deputy Dist. Atty., Elizabeth Stout, Law Student (orally), Portland, for the State.

Neal L. Weinstein (orally), Old Orchard Beach, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

COLLINS, Justice.

The Defendant, Paul A. Vanassche appeals from a conviction by the Superior Court (Cumberland County, *Brennan, J.*) for operating a motor vehicle under the influence of intoxicating liquor, in violation of 29 M.R.S.A. § 1312–B (Pamph 1988). He was sentenced to forty-eight hours in jail and a $350 fine. We affirm the conviction.

I.

Before midnight on October 21, 1988, Vanassche was arrested in South Portland and charged with Operating Under the Influence of Intoxicating Liquors. Vanassche had been observed driving erratically, and upon being stopped exhibited

many signs of intoxication. Before arresting Vanassche, the arresting officer had Vanassche attempt three field sobriety tests, which the Defendant was unable to complete to the officer's satisfaction. At the South Portland police station, Vanassche submitted to a Mobat Sober Meter blood-alcohol breath analysis test, which showed that he had a blood-alcohol level of 0.17% at the time that the test was administered.

The defendant's trial was scheduled as one of three specially assigned cases for Monday, April 24, 1989. All three specially assigned cases involved out-of-state defendants, and all were expected to be tried by juries. Vanassche's trial involved a misdemeanor charge, whereas the two other cases were both felony cases, one of which involved a child sex abuse charge. On Monday, the day set for trial, Vanassche decided to waive his right to a jury trial in order to eliminate the need for time consuming jury selection and thus to facilitate the speedy trial of his case. When the Superior Court learned that Vanassche intended to waive the jury trial, it decided to try the two felony jury trials first, and scheduled the *Vanassche* trial for Wednesday morning. On Tuesday, April 25, the State, relying upon information that Vanassche would not be tried until Wednesday morning, excused the State's witnesses until Wednesday.

Unexpectedly, however, by 3:10 Tuesday, April 25, one of the cases set for trial before the defendant's had been submitted to the jury and the other had been resolved without a trial. The Superior Court could have held Vanassche's trial on Tuesday afternoon, but because the State's witnesses had been excused, the Superior Court continued the case until Wednesday morning as previously scheduled. Vanassche moved to dismiss on the grounds that this continuance caused undue delay. The Superior Court, which had not been previously advised that trying the case on Wednesday would pose a problem for Vanassche, denied his motion.

At the conclusion of the trial, held on Wednesday, April 26, 1989, the Superior Court convicted Vanassche of Operating Under the Influence of Intoxicating Liquor, Class D, and sentenced him to forty-eight hours in the Cumberland County Jail and a $350 fine. Vanassche appeals the conviction and the sentence to the Law Court.

## II.

The first argument that Vanassche presents upon appeal is that the Superior Court committed reversible error by failing to grant Vanassche's motion to dismiss for undue delay. We find no merit to this argument. The order of trial of multiple criminal cases ordinarily rests within the sound discretion of the trial court. *See Lumsden v. State*, 267 A.2d 649, 650 (Me. 1970). Moreover, in a criminal prosecution the granting of a motion for continuance is also within the trial justice's sound discretion. *State v. Greenwald*, 454 A.2d 827, 829 (Me.1982). The generally applicable criteria for review of the granting of a continuance at a criminal trial are whether the ruling justice abused his discretion and whether the party asserting the abuse has shown "palpable error" or "apparent injustice." *State v. Heald*, 393 A.2d 537, 543 (Me.1978); *State v. Simmonds*, 313 A.2d 120, 122 (Me.1973).

The Superior Court did not abuse its discretion by placing the *Vanassche* trial last upon its special docket and continuing commencement of the trial until Wednesday morning. With three criminal cases scheduled on its specially assigned docket for the same Monday, all of which concerned out of state defendants, the Superior Court's decision to give the only nonjury, misdemeanor case the lowest priority was proper. The court also acted prudently by scheduling a specific time at which it anticipated it would first be free to try that case, specifically Wednesday morning, April 26. After the State had reasonably relied upon the court's schedule, and excused the State's witnesses until Wednesday, the Superior Court acted reasonably by choosing not to dismiss the State's case even though the absence of these witnesses turned out to be the only factor that prevented commencement of the trial on Tuesday afternoon. Finally, because Vanassche would have had to wait until Wednesday to

try his case had there not been the unexpected resolution of one of the cases scheduled before *Vanassche*, the Superior Court's decision to continue rather than to dismiss the case was reasonable.

█ Second, Vanassche alleges that the State failed to comply in a timely, meaningful manner with Vanassche's discovery requests, and argues that as a result of this noncompliance Vanassche was rendered unable to present a complete defense. Vanassche admits that the State did not violate an actual discovery order, but alleges that the State violated the terms of a pretrial agreement upon which the defendant relied when he dismissed his discovery motion. The essence of Vanassche's argument is that the defendant was unable to prepare and present expert testimony challenging the results of the blood-alcohol breath test. Therefore, Vanassche contends, the Superior Court committed error by failing to sanction the State, under M.R. Crim.P. 16(d), by either dismissing the State's case against Vanassche or suppressing all evidence related to the blood-alcohol test.

Even though it appears that the State may have failed to provide important discovery materials to the defendant in a timely manner, we find that the Superior court acted within its discretion when it chose not to sanction the State by dismissing the State's case or by suppressing evidence relating to the breath test. In *State v. Bishop*, 392 A.2d 20, 25–26 (Me.1978), we held that the imposition of sanctions under Rule 16(d) is not mandatory. "By the express terms of Rule 16(d), the presiding justice 'may' take 'appropriate' action to remedy a violation of Rule 16(a).... The 'appropriate' sanction may be nothing at all." *Id.*, at 26.

During its consideration of Vanassche's motions to sanction, the Superior Court held as a factual matter that a "reasonably competent" criminal defense attorney, such as Vanassche's counsel, should have been placed "on notice that the test is most likely the balloon, Lucky Laboratories Mobat Sober Meter" from the material that Vanassche received. Based on this, the

Superior Court stated that Vanassche's counsel has had "since some time last November" to prepare a defense.

We will not set aside findings of fact made by a trial court unless those findings are clearly erroneous, even where those findings are based upon documentary evidence. *Estate of Tully*, 545 A.2d 1275, 1277–78 (1988). In this instance, the documents were sufficient to place the defendant on notice that the Mobat Sober Meter was the test used.

Third, Vanassche challenges the trial court's admission of the blood-alcohol test evidence on due process grounds. Vanassche argues that his constitutional right to minimal due process was violated because he was not able to confront and cross-examine each and every person who was involved with the chain of custody of the Mobat Sober Meter kit upon which Vanassche's blood-alcohol level was tested.

█ The Maine Rules of Evidence premise admissibility of evidence on the presentation of "evidence sufficient to support a finding that the matter is what the proponent claims." M.R.Evid. 901(a). 29 M.R. S.A. § 1312 does not provide for any requirement for a "chain of custody" beyond that which would be necessary under Rule 901(a). *State v. Labrecque*, 543 A.2d 369, 370 (Me.1988); *State v. Pickering*, 491 A.2d 560, 562 (Me.1985). In *State v. Nason*, 498 A.2d 252 (Me.1985), we noted that a minor interruption in the chain of custody of evidence does not affect its admissibility, but only the weight to be given to the evidence by the trier of fact. *Id.*, at 256 (citing *State v. Johnson*, 434 A.2d 532, 537 (Me.1981); *Pickering*, 491 A.2d at 560). "Whether the exhibits had been tampered with while in the custody of the police was for the defendant to show and for the jury to determine," we concluded. *Id.* (citing *State v. Desjardins*, 401 A.2d 165, 171 (Me. 1979)).

In *State v. Thompson*, 503 A.2d 689 (Me. 1986), we discussed the admissibility of blood samples challenged by a Defendant who claimed a failure to establish a sufficient chain of custody to guarantee the integrity of the blood specimens:

Chain of custody evidence merely provides one way of satisfying the basic requirements of Rule 901. Proof by that method does not impose any new or extraordinary conditions upon the admission of evidence.... The law does not demand that the proponent of evidence demonstrate the chain of custody so overwhelmingly as to eliminate all possibility of tampering with the exhibit involved. On the contrary, for admission purposes, it suffices if the custodial evidence establishes by the fair preponderance of the evidence rule that it is more probable than not that the object is the one connected with the case.

*Id.*, at 691 (citations and quotation marks omitted). In *Thompson* we concluded, "nothing in Rule 901 obligate[s] the State to parade every individual who handled the blood specimens onto the witness stand to testify subject to cross examination. On the contrary, '[a]ny lack of further [evidence] as to the chain of custody properly went to the weight, and not to the admissibility' of testimony based on [those samples]." *Id.*, (citing *Pickering*, 491 A.2d at 562–63).

 At trial, the arresting officer possitively identified the Mobat Sober Meter test kit admitted as the one used by him at the Vanassche arrest. He testified that the specific test kit used on Vanassche was sealed in its box when he received it. The officer stated further that after Vanassche blew into the test kit the officer disassembled the kit, placed the kit in its box, sealed the box, put the "necessary inscription" on the box, and delivered it to the drop box at the State Police Barracks in Scarborough. The State's chemist who analyzed the Vanassche test kit testified that only three people have access to the locked drop box. The chemist also testified that a routine procedure exists through which one person with access regularly picks up test kits deposited in the drop box, and that the test kit in question was sealed and undamaged when the State's chemist received it. Based on his scientific training, the chemist testified that there was no reason to believe that the sample had been tampered with so as to invalidate its results.

This evidence is sufficient to support the Superior Court's finding that the breath sample analyzed by the chemist was that of the defendant. *See Pickering*, 491 A.2d at 562 (finding similar evidence sufficient). "Any lack of further testimony as to the chain of custody properly went to the weight, and not to the admissibility, of the breath test." *Id.* (citing *State v. Lewis*, 401 A.2d 645, 647 (Me.1979); *State v. Beaudoin*, 386 A.2d 731, 733 (Me.1978); *State v. Stevens*, 137 Vt. 473, 408 A.2d 622, 625 (1979)).

 Finally, Vanassche challenges the Superior Court's sentence. The Superior Court imposed the forty-eight hour minimum incarceration period required by section 1312–B for people who tested with a blood-alcohol level of 0.15% or greater. Vanassche contends that this mandatory sentence violates the Seventh Amendment to the Constitution of the United States and Article I, section 9 of the Constitution of the State of Maine because it is not proportional to the crime. The scenario Vanassche envisions is one in which a defendant, intending to drive only a short distance, consumes a large quantity of alcohol immediately prior to driving, and is instantly stopped by the police. Vanassche argues that because the human body takes time to absorb alcohol the defendant may have a blood-alcohol level well below 0.15% when stopped that increases to more than 0.15% by the time the defendant is administered a blood-alcohol test in the station. Vanassche states:

> Given the statute in its present form, an arresting officer could watch an individual depart from a bar, arrest him and then wait for his blood alcohol level to peak [above 0.15%, and then administer a blood-alcohol test,] and then have the defendant sentenced under this provision.

Vanassche concludes that the mandatory penalty statute is not proportional to the crime because the statute penalizes severely those who "[are] tested as having a blood alcohol level of 0.15% or more" some period after being stopped rather than those who had a blood alcohol level of 0.15% or more when driving.

"One challenging the constitutionality of a statute bears a heavy burden of proving unconstitutionality since all acts of the Legislature are presumed constitutional." *State v. S.S. Kresge, Inc.,* 364 A.2d 868, 872 (Me.1976). *See also, State v. Briggs,* 388 A.2d 507, 508 (Me.1978) (upholding the mandatory sentence imposed by a statute prohibiting "nighthunting" partially upon the presumption of constitutionality attaching to legislative enactments). In *State v. Lubee,* 93 Me. 418, 45 A. 520 (Me.1899), we held that when determining the question whether the punishment imposed is proportional to the offense, "regard must be had to the purposes of the enactment, and to the importance and magnitude of the public interest sought by it to be protected." *Id.,* 45 A. at 521. The public interest that the overall OUI statute seeks to promote is obviously of the greatest importance.

Nothing in this record indicates that the test for the defendant's blood alcohol level was not administered within a reasonable time after the stop. Section 1312–B2(B) clearly provides that the critical time is *"when the person [w]as tested* as having a blood alcohol level of 0.15% or more." (Emphasis added). This language demonstrates that a 0.15% blood alcohol level is indicative of a defendant having consumed such a reckless or unreasonable quantity of alcohol prior to operating a motor vehicle as to warrant a more stringent penalty. Given the State's substantial interest in protecting the public from drunk drivers, the penalty is sufficiently proportional to the crime to withstand the constitutional challenge.

The entry is:

Judgment affirmed.

All concurring.