STATE of Maine

v.

Dennis J. DECHAINE.

Supreme Judicial Court of Maine.

Argued Jan. 18, 1990.
Decided March 15, 1990.

James E. Tierney, Atty. Gen., Wayne S. Moss (orally), Eric Wright, Asst. Attys. Gen., Augusta, for plaintiff.

Thomas J. Connolly (orally), Portland, George Carlton, Bath, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

CLIFFORD, Justice.

Dennis J. Dechaine appeals from the judgments of the Superior Court (Knox County, *Bradford, J.*) entered on the jury verdicts finding him guilty of intentional or knowing murder, 17–A M.R.S.A. § 201(1)(A) (1983), depraved indifference murder, 17–A M.R.S.A. § 201(1)(B) (1983), kidnapping, 17–A M.R.S.A. § 301(1)(A) (1983), and two counts of gross sexual misconduct, 17–A M.R.S.A. § 253(1)(B) (1983 & Supp.1988). Dechaine contends that the Superior Court abused its discretion in denying his motion for continuance made for the purpose of allowing Dechaine to undertake further testing of blood samples; in excluding evidence of an alleged alternative perpetrator; in denying access to confidential records of the Department of Human Services concerning that alleged perpetrator; and in allowing the state medical examiner to testify in the State's rebuttal case concerning the cause of a bruise on Dechaine's arm, an opinion not previously disclosed to Dechaine in accordance with a discovery order. In addition, Dechaine maintains that convictions for intentional or knowing murder and depraved indifference murder, for which concurrent life sentences were imposed, violate his right to be free of double jeopardy. We find no abuse of discretion or clear error in the rulings complained of, and after modifying the judgment to reflect a single conviction for murder for which one sentence is imposed, we affirm the convictions.

On July 8, 1988, the body of twelve-year-old Sarah Cherry of Bowdoin was discovered in a densely wooded area about 500 feet from Hallowell Road in that town. She had been sexually abused prior to her death, which the medical evidence suggested was caused by strangulation or a stab wound. Sarah was last seen on July 6 at the Lewis Hill Road home of the eleven-month-old child for whom Sarah was babysitting that day. On returning home that afternoon, the child's mother found the doors to her home ajar, her child asleep in her crib, and that Sarah had disappeared. After searching her home and yard, she contacted the Sagadahoc County Sheriff's Department and Sarah's mother.

Deputies from that department began efforts to locate Dechaine after determining that papers, identified as a notebook and an estimate for autobody repairs to a 1981 Toyota pickup truck, found outside the home where Sarah had been babysitting, belonged to him. Later that evening they found Dechaine, who was searching for the same Toyota truck. Dechaine said that he had left the truck in the woods near a fishing area and had been unable to locate it afterward. Following *Miranda* warnings, Dechaine agreed to be interviewed and denied any knowledge of Sarah's disappearance, ownership of the notebook or receipt, and having driven on Lewis Hill Road that day. When confronted with information pointing to the presence of his vehicle on Lewis Hill Road, Dechaine stated that he might have driven through the area while looking for a fishing spot and later conceded that the papers were his. He explained their presence near the home from which Sarah disappeared by claiming that someone had placed them there to "set him up."

Dechaine was arrested following the discovery of Sarah's body in a location near where his truck was found. At the close of an eleven-day trial held in March 1989;[1] the jury returned guilty verdicts on every

1. *Dechaine was indicted by a grand jury in Sagadahoc County. The trial was held in Knox* County after a change in venue for trial purposes.

count submitted to it.[2]

## I.

Dechaine first contends[3] that the Superior Court's refusal to grant a motion for a continuance of four to six months, which was the estimated time required to obtain results from further testing of blood samples taken from beneath the victim's fingernails, amounts to a violation of the discovery to which the defendant is entitled pursuant to M.R.Crim.P. 16 and a denial of due process. Tests conducted by the State determined those blood samples to be Type A, the same blood type as that of Sarah Cherry. Dechaine hoped that further testing[4] of the samples would identify a blood component inconsistent with both that type and his own Type O blood, thus implicating a person other than himself.

The trial court denied the motion based upon, among other reasons, the testimony of the State's expert, a forensic chemist. That expert discounted the likelihood that the blood was that of anyone but the victim, Sarah Cherry, based upon the facts that the samples (1) had been taken from the fingernails of the victim's hands which were bound and in close proximity to the numerous small wounds on her neck; (2) matched the blood type of the victim; and (3) did not contain any skin tissue that might suggest that the victim had scratched her assailant and drawn blood. The forensic chemist further testified that the probability that additional testing would yield any results was small, given the minute amounts of sample still available for testing and the likelihood that the particular components of blood that the tests were designed to identify had degraded and could not be analyzed. Dechaine failed to present testimony to rebut these facts and conceded that, even were it possible to obtain results, the admissibility of those results was not certain.

"The decision to deny a motion for a continuance is committed to the discretion of the trial justice, and will be disturbed on appeal only for an abuse of that discretion." *State v. Reed*, 479 A.2d 1291, 1295 (Me.1984); *accord State v. Holt*, 391 A.2d 822, 824–25 (Me.1978). The party seeking the continuance has the burden of establishing that the evidence sought will be relevant and competent, that a continuance will make its procurement likely, that due diligence was used to obtain the evidence

---

**2.** The indictment contained six counts. Count IV, charging rape, 17–A M.R.S.A. § 252(1)(A) (1983), was dismissed by the State prior to trial. Counts V and VI were renumbered IV and V before the case was submitted to the jury, and the judgment and commitment refer to those counts by those numbers. This harmless clerical error may readily be corrected. *State v. Meader*, 564 A.2d 1177, 1177–78 (Me.1989).

Dechaine was sentenced to serve concurrent life sentences for each of the murder convictions and twenty years for each of the three remaining counts: two counts of gross sexual misconduct and one count of kidnapping.

**3.** While Dechaine has not raised the sufficiency of the evidence as an issue on appeal, we have reviewed the record and note the evidence in support of Dechaine's guilt. *State v. Barry*, 495 A.2d 825, 826 (Me.1985). Some of that evidence, in addition to the evidence that implicated Dechaine initially (*see supra* pp. 131–132), included (1) the testimony of one neighbor of the family for whom Sarah Cherry was babysitting who observed Dechaine's red Toyota truck with its damaged front headlight driving unusually slowly on Lewis Hill Road the day before the kidnapping and murder, and another neighbor who saw a red Toyota truck like De-chaine's driving on that road on the afternoon that the abduction took place; (2) testimony that lengths of rope used to tie Sarah were similar to those found in both Dechaine's truck and barn, and that a length of rope discovered in the area where Sarah's body was found and a length of rope found in Dechaine's truck were once one rope; (3) testimony that a tire impression found outside the home where Sarah had been babysitting was consistent with the tire tread of Dechaine's truck; (4) testimony that the numerous small stab wounds covering Sarah's chest and neck were consistent with those inflicted with a small knife like the one Dechaine routinely carried on his key chain but that was not found; (5) numerous contradictions in Dechaine's story, e.g., admissions concerning his drug use that contradicted his initial explanation of being in the area in order to fish; and (6) testimony by detectives and corrections officers concerning several separate admissions to the crime made by Dechaine. Based on all the evidence, the jury's conclusion that Dechaine was guilty beyond a reasonable doubt of all charges submitted to it was rational. *See Barry*, 495 A.2d at 826.

**4.** The further testing that Dechaine wanted to be conducted included DNA and protein analyses.

before the commencement of trial, and that the length of the continuance sought is reasonable. *See Reed*, 479 A.2d at 1295 (citations omitted). The trial court is in a unique position to determine the propriety of a continuance. *Id.* Though it may have been within the trial court's discretion to have granted Dechaine's motion to continue the trial for four to six months, the denial of the motion, given the lengthy delay and the uncertainty of reliable results, does not constitute an abuse of discretion. *Id.*

■ Moreover, we do not find that the State's own testing, designed to determine blood type, that consumed most of the available sample, amounted to a failure to preserve evidence that resulted in the deprivation of due process. *Cf. Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988). The State's legitimate use of "evidentiary material of which no more can be said than that it could have been subjected to [other] tests, the results of which might have exonerated the defendant," does not constitute a denial of due process of law. *Id.*

## II. Evidentiary Rulings

The question of the relevancy of proffered evidence is reviewed under a clear error standard. *See State v. Giovanini*, 567 A.2d 1345, 1346 (Me.1989); *see also State v. Kotsimpulos*, 411 A.2d 79, 81 (Me. 1980). Because, however, admissibility of evidence frequently involves the weighing of probative value against considerations militating against its admissibility, *see, e.g.*, M.R.Evid. 403,[5] the decision to admit evidence is more frequently reviewed under an abuse of discretion standard. *State v. Nye*, 516 A.2d 560, 562 (Me.1986); *accord State v. Morton*, 397 A.2d 171, 178–79 (Me. 1979). Dechaine maintains that the trial court abused its discretion in (1) excluding evidence in support of the theory that an alleged alternative perpetrator committed the crime; (2) refusing to order access to confidential records of the Department of Human Services concerning that individual; and (3) allowing the introduction of expert testimony that was not disclosed prior to trial.

### 1. *Exclusion of Evidence in Support of the Theory of an Alternative Perpetrator.*

■ At trial, Dechaine attempted to introduce evidence that another person, Douglas Senecal, was responsible for the murder and for implicating Dechaine. The proffered evidence included testimony that Dechaine maintained would show that Senecal had murdered Sarah in order to prevent her from offering testimony against him at a trial scheduled for July, 1988.[6]

---

**5.** M.R.Evid. 403 provides that:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**6.** Douglas Senecal's wife was formerly married to the husband of Sarah Cherry's mother. Senecal had been indicted for a sexual offense (unlawful sexual contact) against his stepdaughter, the daughter of Senecal's wife and Mrs. Cherry's husband. Dechaine suggests that the trial of that matter, which was pending at the time of Sarah Cherry's murder, provided Senecal with a motive for killing Sarah, namely, to prevent her from testifying as a witness for the State at Senecal's trial. Dechaine also contends that Senecal owned a truck similar to his own, and that Senecal "set-up" or "framed" Dechaine by planting his notebook and truck repair bill in the driveway of the home from which Sarah disappeared.

The evidence that Dechaine proffered, however, did not substantiate his theory. Dechaine had no evidence that Sarah Cherry was to be a witness at Senecal's trial or that Sarah had any knowledge of the incident for which Senecal was charged. Instead, the available evidence was that Sarah was not listed as a witness and that the State had no plans to call her as a witness. In addition, Dechaine had no evidence that Senecal knew that Sarah was babysitting on July 6. Indeed, the only available evidence was that Senecal's younger stepdaughter, a good friend of Sarah's and the most likely source from whom Senecal would have learned when and where Sarah was babysitting, knew nothing of Sarah's plans to babysit.

Moreover, at the time of Sarah Cherry's abduction and murder, Senecal knew that his elder stepdaughter, the alleged victim of the sexual offense and the State's principal witness, had left the State of Maine and was unavailable to testify against him. Senecal's truck was a medi-

A criminal defendant is entitled to present evidence in support of the contention that another is responsible for the crime with which he is charged. *State v. Harnish*, 560 A.2d 5, 9 (Me.1989); *State v. LeClair*, 425 A.2d 182, 187 (Me.1981); *see* M.R.Evid. 401.[7] The evidence "must be admitted if it is of sufficient probative value to raise a reasonable doubt as to the defendant's culpability." *State v. Conlogue*, 474 A.2d 167, 172 (Me.1984); *see* M.R.Evid. 402. We have, however, upheld the exclusion of evidence that is "too speculative or conjectural or too disconnected from the facts" of a defendant's prosecution. *LeClair*, 425 A.2d at 187; *see also Harnish*, 560 A.2d at 9; *State v. Giglio*, 441 A.2d 303, 307 (Me.1982).

The trial court heard Dechaine's offer of proof and reviewed *in camera* the confidential records of the Department of Human Services and concluded that the evidence Dechaine represented he could produce purporting to implicate Douglas Senecal in the kidnapping, sexual abuse and murder of Sarah Cherry did not provide a sufficient connection between Senecal and Sarah Cherry. *See Harnish*, 560 A.2d at 9. Dechaine's proffer demonstrated no reasonably plausible motive for Senecal to harm Sarah Cherry and no knowledge of

an opportunity for him to abduct her from the Lewis Hill Road home.[8]

For alternative perpetrator evidence to have "sufficient probative value to raise a reasonable doubt as to the defendant's culpability," *Conlogue*, 474 A.2d at 172, it must be more than speculative and conjectural. The evidence incriminating another person "must be competent and confined to substantive facts which create more than a mere suspicion that such other person committed the [crime]...." *Fortson v. State*, 269 Ind. 161, 379 N.E.2d 147, 153 (1978). The connection between the alternative perpetrator and the crime must be reasonably established by the admissible evidence the defendant is prepared to offer. Without such evidence, a defendant cannot be allowed to use his trial to conduct an investigation that he hopes will convert what amounts to speculation into a connection between the other person and the crime. *See State v. Williams*, 462 A.2d 491, 492 (Me.1983); *State v. White*, 460 A.2d 1017, 1025 (Me.1983). Based on Dechaine's offer of proof, there was no clear error in the trial court's conclusion that Dechaine's evidence of an alternative perpetrator constituted nothing more than speculation and, therefore, was not relevant to the charges against Dechaine.[9]

um-sized, red-and-white Ford Ranger pickup truck, unlike Dechaine's smaller solid-red Toyota truck. Dechaine produced no evidence that Senecal knew Dechaine was in the Lewis Hill Road area of Bowdoin that day, that he had access to Dechaine's locked truck, or that he even knew of the existence of Dechaine. Other evidence that Dechaine maintained implicated Senecal was hearsay and clearly inadmissible. The trial court concluded that Dechaine's evidence was speculative and excluded it.

In addition to testimony concerning Senecal's prosecution, Dechaine attempted to introduce evidence concerning a break-in at a produce stand that he had sublet during the summer of 1988. In an offer of proof, Dechaine stated that his lessee would have *testified that sometime* between Sarah Cherry's disappearance on July 6 and Dechaine's arrest on July 8, various items of Dechaine's personal property were stolen from that location. The property allegedly taken at the break-in was not evidence that linked Dechaine to Sarah Cherry nor was it connected to the instant case in any way. The trial court's finding that the evidence of the break-in was speculative is not clearly erroneous and the de-

cision to exclude it does not constitute an abuse of discretion.

7. M.R.Evid. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

8. *See supra* note 6.

9. Moreover, even if Dechaine's proffered evidence purporting to implicate Senecal could be said to have some relevance, however tenuous, its exclusion was well within the trial court's discretion. *See State v. Morton*, 397 A.2d 171, 179 (Me.1979). Had Dechaine been allowed to pursue the alternative perpetrator theory, the trial of Dennis Dechaine would have turned into the trial of Douglas Senecal. *See id.* The admission of that evidence would have resulted in "confusion of the issues, ... misleading the jury[,] ... undue delay [and] waste of time...." M.R.Evid. 403. *See State v. Williams*, 462 A.2d 491, 492 (Me.1983); *State v. White*, 460 A.2d 1017, 1025 (Me.1983).

2. *Denial of Access to a Confidential Record of the Department of Human Services.*

■ In support of the theory that Douglas Senecal had committed the crime, Dechaine attempted to gain access to a record created in connection with the Department of Human Service's child protective activities concerning Senecal's stepdaughter that Dechaine maintained would link Sarah Cherry to Senecal. That record, made confidential by 22 M.R.S.A. § 4008 (Pamph. 1989),[10] may be disclosed to "[a] court on its finding that access ... may be necessary for the determination of any issue before [it]...." *Id.* at (3)(B). Complying with the procedure set out in *State v. Perry,* 552 A.2d 545, 547 (Me.1989) (following *Pennsylvania v. Ritchie,* 480 U.S. 39, 58, 107 S.Ct. 989, 1002, 94 L.Ed.2d 40 (1987)), the trial court properly conducted an *in camera* review of the record's contents and ordered that its confidentiality be maintained since the record contained nothing to suggest that Sarah Cherry was in any way involved in the Department's investigation of the alleged abuse of Senecal's stepdaughter. The trial court was correct in its assessment that the confidential record contained nothing more than was already advanced in Dechaine's offer of proof. Access to the record was not "necessary for the determination of any issue before the court," 22 M.R.S.A. § 4008(3)(B), and the trial court's refusal to order disclosure of its contents was not an abuse of discretion. *See Rossignol v. Commissioner of Human Services,* 495 A.2d 788, 791 (Me.1985).

Moreover, after making an independent review of the Department record, "we cannot say that the information [contained therein] 'probably would have changed the outcome of [Dechaine's] trial.'" *Perry,* 552 A.2d at 547 (quoting *Ritchie,* 480 U.S. at 58, 107 S.Ct. at 1002). In these circumstances, there was no violation of Dechaine's right to due process. *Id.*

3. *Introduction of Expert Testimony that was not Disclosed in Accordance with an Existing Discovery Order.*

Dechaine contends that the prosecutor's failure to disclose prior to trial an opinion of Dr. Ronald Roy, Deputy Chief Medical Examiner, that was elicited on rebuttal amounts to a violation of the discovery order issued by the trial court.[11] *See* M.R. Crim.P. 16(c). The substance of that opinion, based upon a photograph of Dechaine's arm that was taken on the day following Sarah Cherry's disappearance, rebutted the contention that the bruise was the result of a hypodermic injection of drugs, a fact central to Dechaine's explanation of his activities on the afternoon that Sarah disappeared.

■ The fact that evidence otherwise discoverable pursuant to M.R.Crim.P. 16 is used solely for impeachment and is offered in the State's rebuttal case does not relieve the State from its duty of disclosure. *State v. Landry,* 459 A.2d 175, 177 (Me. 1983); *see, e.g, United States v. Mitchell,* 613 F.2d 779, 781 (10th Cir.), *cert. denied,* 445 U.S. 919, 100 S.Ct. 1283, 63 L.Ed.2d 604 (1980). That disclosure is consistent with the purpose of discovery which is designed "to enhance the quality of the pretrial preparation of both the prosecution and defense ... to the end of making the result of criminal trials depend upon the merits of the case...." *State v. Bishop,* 392 A.2d 20, 26 (Me.1978); *see also State v. Thurlow,* 414 A.2d 1241, 1244 (Me.1980); *State v. Mason,* 408 A.2d 1269, 1271 (Me.1979). While Dr. Roy's opinion should have been disclosed, whether to impose the sanction of exclusion of such evidence is a matter within the trial court's discretion. *State v. Vanassche,* 566 A.2d 1077, 1079 (Me.1989); *State v. Hutchins,* 433 A.2d 419, 421 (Me. 1981). Dechaine did not move for a contin-

---

10. That statute provides, in pertinent part, that: All department records which contain personally identifying information and are created or obtained in connection with the department's child protective activities ... are confidential....

11. That order required the State to make available "written reports of all experts intended to be called by the State either in the case in chief or rebuttal and to specify the facts, opinion and conclusions relied upon by the same."

uance that might have allowed him to obtain and present expert testimony to rebut that presented by Dr. Roy. He conducted a cross-examination on the cause of the bruise that proved quite effective. Moreover, the court expressly found that Dechaine was not surprised by the testimony. *State v. Ledger,* 444 A.2d 404, 412 (Me. 1982). Dechaine has not demonstrated that degree of prejudice that would require the imposition of a sanction. *Ledger,* 444 A.2d at 412; *Thurlow,* 414 A.2d at 1244. The trial court acted within its discretion in refusing to exclude Dr. Roy's testimony in the State's rebuttal case. *Vanassche,* 566 A.2d at 1079; *Hutchins,* 433 A.2d at 421.

### III.

■ Finally, Dechaine contends that dual convictions of intentional or knowing murder, 17–A M.R.S.A. § 201(1)(A), and depraved indifference murder, 17–A M.R.S.A. § 201(1)(B), for which concurrent life sentences were imposed violate double jeopardy rights guaranteed him by the State of Maine and United States Constitutions.[12] A single homicide may give rise to no more than one homicide conviction for which one sentence is imposed. *State v. Allard,* 557 A.2d 960, 962 (Me.1989). The State may, however, uphold that single murder conviction on appeal under either theory that was proved beyond a reasonable doubt at trial. *Id.; cf. State v. Walsh,* 558 A.2d 1184, 1186–87 (Me.1989) (requiring prosecutorial election in instances where one of the two offenses for which a defendant was convicted was a lesser included offense of the other). The two alternative murder counts with which Dechaine was charged and ultimately convicted do not involve a lesser included offense and the State lawfully "prosecute[d] [Dechaine] for one offense under alternative theories of criminal responsibility." *Allard,* 557 A.2d at 962. We agree, however, that dual convictions and dual sentences violate Dechaine's right to be free of double jeopardy. *Id.*

The entry is:

Judgments modified to reflect conviction on Counts I and II for a single offense of murder with a single sentence of life imprisonment; and convictions on Counts III, V and VI rather than Counts III, IV and V, and, as modified, affirmed.

All concurring.

---

**12.** The Constitution of the State of Maine provides that "[n]o person, for the same offense, shall be twice put in jeopardy of life or limb."

Me. Const. art. I, § 8. The Constitution of the United States secures the same right. U.S. Const. amend. V.