STATE OF MAINE

KNOX, ss.

STATE OF MAINE
Knox. S.S., Clerks Office
SUPERIOR COURT

JUL 19 2004

RECEIVED AND FILED
Susan Guillette, Clerk

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-03-580

STATE OF MAINE

v.

OLIVER WILLIAMSON,

Defendant

DECISION AND ORDER

DONALD L. GARBRECHT
LAW LIBRARY

AUG 20 2004

Pending before the court is the defendant's motion to dismiss which seeks to have an indictment charging him with two counts of Unlawful Sexual Contact dismissed because the prosecution is barred by the applicable statute of limitations and because of unfair pre-indictment delay in pursuing this case.

A testimonial hearing was conducted on the motion at which two witnesses testified, the defendant and Sergeant Glenn Lang of the State Police. From this hearing, the court makes the following findings of fact:

Oliver Williamson, the defendant, is 76 years old, a native of Rockland, but who has also lived in the St. Johnsbury, Vermont, area in recent years. He has family in the Rockland area, including a daughter in Glen Cove with whom he currently resides. Although he is a drywaller by trade, his avocation has been as an amateur softball payer who plays in a league which conducts its games in various parts of the country in the Summer. It was at one of these games in Mississippi in October of 2003 that he was arrested on the grand jury indictment which he seeks to have dismissed.

In 1995, Williamson was told by another daughter, April, that a granddaughter had alleged that he had sexually abused her. He was told to get out of town; he had been living at the Tradewinds Motel in Rockland where he was doing renovations, so returned to the St. Johnsbury area.

Since then, he has avoided April and her husband, but has kept in contact with the rest of his family in the Rockland area and has visited them in the intervening years from time-to-time.

Apparently, the allegations against Williamson were referred to the Department of Human Services and, eventually, to then Detective Lang who interviewed the alleged victim, Brooke Robertson. At that time, she was 16 years old. Robertson told Lang that Williamson had sexually abused her and a friend, Alisha MacWiliams, beginning in 1989 when Brooke was 10 or 11 years old. According to Brooke, the abuse she described happened a great many times.[1] *See* Affidavit of Glenn C. Lang. Detective Laurie Northrup was also assigned to the case and is one of the State Police detectives who is female.

Lang attempted to find Williamson, but Brooke's parents told him that Williamson had been told to leave town. Lang then contacted Delmar Randall, a friend of the defendant's, and asked him to get word to Williamson to call Lang. As a result, the defendant did call Lang from Florida and Lang invited him to return to Maine for an interview. Williamson agreed to be interviewed on the phone, then said he would come back to Maine for an interview. Several days later he called Lang from New York and said he was too sick to travel. *Id.*

On October 13, 1995, Lang applied to a complaint justice for a complaint and an arrest warrant charging Williamson with one count of Unlawful Sexual Contact committed against Brooke Robertson on or about February 1, 1995. The complaint justice obliged and these documents were authorized.

---

[1] The court was not advised how the dates in the indictment of February 1, 1992, and February 1, 1993, were determined.

Lang kept these documents and did not file them with the District Court because he wanted to keep the original of the warrant and not have it filed and thereby placed in the "system."[2] He did so because he wanted to keep the warrant and execute it when he interviewed the defendant rather than have it served on him as the result of a traffic stop or the like which might deprive him of the interview opportunity. Ultimately, he forgot about this paperwork and did not file it with the District Court or with the "system."

In the meantime, Williamson called his attorney in Rockland, Fred Newcombe, Esq., to see if there were any warrants for him. Mr. Newcombe apparently checked and reported back to Williamson that there were none.

In addition, according to Williamson, a female trooper also contacted him to speak to him about the case but that when he advised her that he wanted to speak to an attorney first, she told him if he wanted to talk to a lawyer he should not bother calling back. Williamson was unsure if he was in Vermont or New York at the time.

In June of 1996, Williamson was in an automobile accident in Wells, Maine, to which the police responded, but he was not served with a warrant. Williamson assumed that if there had been a warrant, he would have been arrested at that time.

In 1998, he was involved in another automobile accident in Vermont which was investigated by the Vermont State Police but, again, no warrant was served.

Williamson has also been stopped and asked for a license and registration with no warrant being served, and no one in law enforcement has contacted him in the last eight or nine years about his granddaughter's complaint.

---

[2] By this, the court understands that warrants are placed in a warrant depository system which serves to track warrants, determine if they are outstanding or have been executed, and also to alert officers that a particular individual with whom they may have contact is "wanted" on a warrant. *See* 15 M.R.S.A. §§ 601 *et seq.*

According to Lang, from the beginning of this investigation, the District Attorney's Office was "in the loop" on this case and may have been the agency which had him assigned to the case. In the normal course of events, the District Attorney would have reviewed the affidavit before he applied for the warrant.

Eventually, Lang discovered that the District Court did not have the warrant and it was not in the "system." Accordingly, he went to the District Attorney's Office in 1999 and a decision was made to get a new warrant. He was told by the District Attorney's Office that if the defendant was out-of-state, the statute of limitations might be tolled so it would be important to find the defendant to ask him where he had been.

Lang had also learned from Brooke that her grandfather was in Vermont. As a result, Lang asked the Vermont State Police to assist him in finding the defendant. That agency agreed to this request and watched a post office in Vermont for a week and went to Williamson's residence. Lang kept in contact with the Vermont State Police during 1999 but they were without success in locating Williamson. According to Williamson, he had a post office box in either Lyndonville or St. Johnsbury, Vermont, and a Vermont driver's license.

Lang testified that he knows of no other efforts to contact the defendant since 1999, and of no further activity in Vermont to find him. He interviewed no other family members to find the defendant, but knew he played in a softball league. Other than this, Lang took no other steps to locate Williamson from 1995 to 1999 and does not know why the District Attorney did not present the case to the grand jury during those years or if a new warrant had been obtained.

In 2003, Lang learned a different detective, Scott Bryan, had been assigned to the case, but does not know what happened with this case from 1999 to 2003. He also did not know why the case was not presented to the grand jury until 2003, but opined that a

statement from the defendant would not have kept the case from being presented to the Grand Jury.

On September 16, 2003, the District Attorney filed a motion in the District Court to reissue the warrant in this case, representing that in 1999 it recovered the warrant from Detective Lang and returned it to the District Court but that no copy had been provided to the warrant repository and the original could not be found.[3] Further, the District Attorney represented that "new information"[4] indicated that the defendant was in Maine occasionally "and could be arrested if a copy of the warrant is provided to the warrant repository."

The District Court granted the motion on September 23, 2003, and a new warrant was issued that day. According to the defendant's post-hearing memorandum, the defendant was arrested in October of 2003 in Gulfport, Mississippi, and brought to Maine via the extradition process.

The indictment charging the defendant with two counts of Unlawful Sexual Contact is dated December 3, 2003.

At the hearing on the pending motion, the defendant credibly testified that he has been getting disoriented in recent years and has no memory of where he was living in February of 1992 and February of 1993 – the dates referenced in the indictment. He also testified that he has no records of where he was living then and knows of no one who could say where he was although during this time he came to the Rockland area to

---

[3] The District Court docket entries show an entry for 12/13/1999 that the complaint in this case issued on 10/13/1995 with "Certified Copy to Warrant Repository" which confirms the District Attorney's representation. The next docket entries are on 9/23/03 and show that the warrant on the complaint was vacated that day for the apparent reason, "unable to find warrant" and a new warrant was authorized. It is unknown if this means that Detective Lang could not find the warrant or the District Court clerk could not find it.

[4] The court was not advised at the hearing on this motion what the source and timing of this information was.

visit his family but can give no specifics. He testified that he doubts he can recall events in the 1992-1995 time frame.

Although the defendant complains in the pending motion that the statute of limitations to prosecute this offense had expired, he makes no mention of this claim in his memorandum. Perhaps this is because he agrees, as the court does, that the analysis by the State of the statute of limitations claim in its memorandum is correct. Accordingly, the court will decline to address this issue further as it concurs with the position of the State, as expressed in its memorandum, that this prosecution was commenced within the applicable statute of limitations.

What remains, then, is the defendant's two arguments that, first, the pre-indictment delay in this case violated his constitutional due process rights and, second, the court ought to dismiss the case via M.R. Crim. P. 48(b) for "unnecessary delay in . . . presenting a charge to a grand jury." *Id.*

With respect to the defendant's first contention, our Law Court has acknowledged that the due process clauses of our country's and state's constitutions have a limited role in protecting a defendant against "oppressive delay." *State v. Hutchins*, 433 A.2d 419, 422 (Me. 1981). In this regard, it has adopted the federal standard to determine if pre-indictment delay may result in a successful due process challenge to an indictment. *See State v. Cyr*, 588 A.2d 753, 756 (Me. 1991). "Under this standard, the defendant must first demonstrate 'actual and unjustifiable' prejudice resulting from a delay in seeking an indictment. Only then does the court inquire as to the reasons for the delay that may be offered by the State and determine, on balance, whether the prejudice caused by the delay remains unjustified." *Id.* The burden of persuasion as to these tests is the defendant's. *Id.*

The prejudice cited by the defendant is the inability to remember events or find witnesses to account for his, or perhaps, the witnesses' activities and whereabouts in 1992 and 1993 from 1995 forward – the year the allegations arose. In the court's view, this passage of time is so great that not only does the court, as noted, find the defendant's claimed loss of memory credible for that period of time, it is difficult to believe that any potential witness could testify with confidence as to events which are now approximately 11 and 12 years old. It must be remembered that the defendant is not only presumed to be innocent of these charges, if in fact he is innocent by virtue of a legitimate alibi, for example, it will be extremely difficult for him to raise such a defense, especially where his claim of lost memory appears to be legitimate. So, were this case to go to trial, the defendant's only advantage by the passage of time will be that the prosecution's witnesses' memory will be dim as well.[5] But, at the same time, the defendant will be disarmed from mounting a defense, such as alibi, or from attacking the prosecution's case by contradicting testimony as to dates, events and circumstances now compromised by the cumulative imperfections of human memory over long periods of time.

The court finds, under these unusual circumstances, that the prejudice is actual, i.e., that the defendant would in fact face extraordinary difficulties in defending himself from these charges either by his challenge to the State's case or in presenting his own. Moreover, this prejudice, in the court's view, is unjustifiable. The delay in this case from 1995 to 1999 was due to the investigating officer's having lost track of the case. In 1999, when it was rediscovered, only modest efforts were made to find the defendant to interview him. After that, it appears nothing was done with the case for another four

---

[5] On the other hand, the District Attorney advises that he has taped statements from the victim and a witness which could probably be used to refresh their recollections.

years until another investigator was assigned. So, while this is not a case in which the State sought to harass or purposely disadvantage a defendant by prolonging an investigation for the purpose of causing him prejudice, *see United States v. Marion*, 404 U.S. 307, 325; 92 S.Ct. 455, 466; 30 L.Ed.2d 468, 481-482 (1971), it is a case of a neglected investigation which was permitted to lie fallow for eight years, except for brief, unproductive investigative and procedural activity at the mid-point of this time period. Apparently, the causes for this inattention were that the case was forgotten or its paperwork was misplaced from 1995 until 1999 and nothing was done thereafter for four more years. In the court's view, such neglect and inaction cannot be rationalized and must be viewed as facially unreasonable. Indeed, nothing in the record or in the testimony produced at the hearing would demonstrate that the passage of time would not affect the ability of the defendant to contest these charges. Accordingly, the court concludes that the prejudice to the defendant by the eight plus years of pre-indictment delay is "actual and unjustifiable prejudice." *State v. Cyr, id.*

Once the court is satisfied that a defendant has established "actual and unjustifiable" prejudice, it must next evaluate the reasons offered by the State for the delay "and determine, on balance, whether the prejudice caused by the delay remains unjustified." *Id.* The burden of persuasion, however, remains with the defendant. *Id.*

According to Sergeant Lang and the post-hearing memorandum of the State, one justification for pre-indictment delay was that the State wanted to be able to confront and interview the suspect and no investigation can be complete without doing so. Several aspects of this case, however, undercut this claim. First, according to Sergeant Lang, there was no reason that this case could not have been presented to a grand jury without having interviewed Williamson. Second, a female State Police officer, probably Detective Laurie Northrup, was able to contact defendant by phone in Vermont, and

was told by him that he wanted to speak with an attorney before talking with her. Northrup then told him if he were to talk to a lawyer, not to bother calling back. At this point, the investigating agency knew it was unlikely to get a statement from the defendant and, indeed, discouraged him from initiating contact for that purpose.

Next, even, if it were true that an interview from a suspect is indispensable to the presentation of this type of case to a grand jury, and also accepting as correct the State's claim that the defendant was transient, it can only be concluded that the State's efforts to accomplish this part of their investigation were, at best, anemic.

Detective Lang obtained a complaint and a warrant for the defendant in October of 1995 but, because he wanted to confront Williamson rather than have him apprehended by another officer unfamiliar with the case, he held on to this paperwork and did not file it with the District Court or "the system." This tactic, while it may be understandable in certain instances, violates the meaning of M.R. Crim. P. 4(a)(5), (c)(1) as that rule existed in 1995, and expressly violates the law in Maine which requires that the execution of an arrest warrant receive a high priority and not be retained by an investigating agency for more than 10 days before placing it in the warrant repository. 15 M.R.S.A. §§ 602, 605(3).

Had these laws been obeyed and had the warrant not been retained exclusively by Detective Lang, and ultimately forgotten or lost by him, there is reason to believe the defendant would have been found sooner and the State could have had its confrontation opportunity so that it could present the case to the grand jury in a timely way. Such a conclusion is buttressed by the fact that once the warrant was reissued and properly lodged, the defendant was arrested within a month.

The State argues in its memorandum that the cause for the delay was, in large part, the defendant's fault. This is because he engaged in a "flight" from the State, that

he is a "transient" and lives a "nomadic lifestyle." These characterizations, however, beg the question of why the State did so little to find him and, once he was contacted by phone, told him not to bother setting up an interview if he was going to consult with an attorney. Moreover, the defendant simply cannot be blamed for the inaction of the investigating officer who lost the warrant and then forgot about the case for years.

In the end, these explanations fall short of providing any justification for a delay in excess of eight years to present this case to a grand jury and the court concludes that the defendant has met its burden of persuasion in this regard.

In reaching this conclusion, the court is mindful of the Supreme Court's admonition that, "Judges are not free, in defining 'due process' to impose on law enforcement officials our 'personal and private notions' of fairness and to 'disregard the limits that bind judges in their judicial function . . .'", but most only determine whether compelling a defendant to stand trial, after an indictment is delayed to investigate further, violates those "'fundamental conceptions of justice which lie at the base of our civil and political institutions.'" *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752, 759 (internal citations omitted). In the court's view, the failure to dismiss this indictment would contravene this standard.

With reference to the argument that M.R. Crim. P. 48(b) also authorizes a dismissal for "unnecessary delay in presenting the charge to a grand jury," the court concurs with the State's argument that this rule only applies to delay in presentment after a defendant has been ordered held by the District Court for this purpose. Were the interpretation otherwise, the court would be free to dismiss a charge based on a separate concept of unnecessary delay and could ignore the higher standard of a denial of due process to accomplish this purpose. Neither *State v. Cyr, id*, nor *United States v. Lovasco, id.*, would permit such discretionary decision-making by a judge which would

result in the termination of a prosecution. Instead, the cited rule must be interpreted to apply to those cases in which a defendant is incarcerated or required to provide bail until his case is presented to a grand jury. Moreover, as opposed to due process grounds, a dismissal under the circumstances referenced in M.R. Crim. P. 48(b) may be without prejudice. Cluchey and Seitzinger, MAINE CRIMINAL PRACTICE, rev. ed., § 48.4. Dismissal here, of course, must be with prejudice. Otherwise the State would be free to re-indict the defendant which would entail the same due process violation described here.

The court will also decline the State's invitation to defer action on this motion until after trial. This approach may make sense in a case such as *State v. Cyr, id.,* where a court, for example, needs to assess the impact of lost evidence; however, in this case we have the straightforward and credible representation by a defendant of little memory of events of years ago – a claim which would either be remade at trial or would have kept him from testifying at all.

So, in the end, the court finds that the defendant's due process rights have been violated by the State's unjustifiable inaction in this case and that to conclude otherwise would violate "fundamental conceptions of justice." *United States v. Lovasco, id.,* Me. Const. art. 1, § 6-A; U.S. Const. Amend. V.

For the reasons cited herein, the clerk is DIRECTED to make the following entry:

Motion to Dismiss is GRANTED. Case is DISMISSED with prejudice.

So ordered.

Dated: July 16, 2004

John R. Atwood
Justice, Superior Court